ELIJAH L. McCOY v. ALEXANDER McKOWEN, Adm'r, &c.

Where an agent is employed by his principal to transact his lawful business, and while so engaged, the agent transcends his authority, his acts do not bind the employer, unless sanctioned by him.

It is settled, that a wilful trespass by a servant will not show that the master is a trespasser, without express evidence that the act was done by his direction; for an authority to commit a trespass cannot be implied.

IN error from the circuit court of Amite county; Hon. Stanhope Posey, judge.

The defendant in error (McKowen) brought an action of trespass *vi et armis*, in the circuit court of Amite county, against McCoy and Haywood, for beating a female slave hired of defendant (McKowen) by the plaintiff, from the effects of which beating the slave died. Suit was dismissed as to Haywood, one of the defendants in the court below, and judgment was rendered against the other defendant (McCoy). The facts upon which the judgment was rendered, will be found substantially stated in the opinion of the court.

McCoy prayed a writ of error to this court.

*H. F. Simrall* for appellant.

The master or overseer has a legal right to chastise the slave in cases such as this; and such an infliction of corporal punishment does not become a trespass nor exceed the right and authority of either, until the punishment becomes excessive, cruel, and unusual. *Gillem* v. *Senter*, 9 Ala. R. 397; *Helton* v. *Carton*, 2 Bailey, 99.

McCoy *v.* McKowen.

Corporal punishment may be lawfully inflicted upon slaves, apprentices, scholars, &c., by those having authority over them. *Brown* v. *Howard,* 14 Johns. 122.

A man cannot act for another, and make him *particeps criminis* in a trespass, without special authority to do so, or unless the latter assented to a trespass committed for his benefit. Even where the trespass is done by a slave, the owner is not liable, unless they acted by his authority and command. As where a slave drove his master's coach and left it standing in the street, when the horses ran off and broke the plaintiff's bread cart, it was held that the master was not liable for the negligence of his servants. 3 McCord, 400.

Where the defendant's slaves suffered a fire to break out in a field where they were at work, and it burned up the plaintiff's crib, it was held that the master was not liable. 2 Bay, R. 345. A master may constitute his slave his agent; and there is no distinction between the circumstances which constitute a slave and a freeman an agent. *Christian* v. *Bowman,* 1 Hill, R. 270.

There is no evidence that the wounds which caused the death of the slave was caused by or under the direction of McCoy, or that he even assented to the act, nor that the stripes inflicted were of themselves sufficient to produce death. The negro, as is in testimony, may have died from apoplexy, brought on by anger and exertion.

This court will interfere in verdicts such as this, where there is no proof to sustain them. *Young* v. *Thompson,* 3 S. & M. 129; *Leggett* v. *Simmons,* 7 Ib. 348.

*D. Mayes,* for appellee,

In reply, contended the counsel for appellant made the case at most one of doubt in the testimony upon which the verdict was found; and in such cases, this court will not interfere.

Mr. Justice HANDY delivered the opinion of the court.

This was an action of trespass *vi et armis,* brought by the defendant in error against one Haygood and the plaintiff in error, for beating a female slave hired of the defendant in error,

to whom she belonged, by the plaintiff in error, from the effect of which she died.

It appears by the record, that the facts of the case are in substance as follows: That McCoy had ordered the slave, on the night before the occurrence, to get an early breakfast the next morning; but she not having arisen in due time, he directed Haygood, his overseer, to go into the kitchen and arouse her. Soon after he went into the kitchen, a noise was heard, as of a difficulty between the overseer and the slave. It was between 4 and 6 o'clock in the morning. McCoy got up and went out into his gallery, when the woman ran to him for protection. He told her she must submit, which she did; and by his direction, the overseer whipped her with the lash of a whip, in a manner not cruel or unusual, or calculated to injure her seriously. After the whipping, she walked to the kitchen, a short distance off, was seen to stumble once, but walked very well. Before coming out of the kitchen, she had resisted the overseer. About 8 o'clock of the same day, she died. She had two wounds upon her head, one over the eye, and the other behind the ear, which might have been produced by a fall against an oven, or something of that kind in the kitchen, but were most probably inflicted by the overseer in the kitchen. On *post mortem* examination, they appeared to be contused wounds, made by a blunt instrument, and might have produced death. The scull was not fractured, but the bloodvessels of the brain were engorged with blood. The physician proved that the woman was of a habit predisposed to apoplexy, and that violent passion and exertion in such persons sometimes produces apoplexy. It appears that the wounds on the head were not inflicted during the whipping ordered by McCoy, or by his direction.

The suit was dismissed as to the overseer, and a verdict and judgment were rendered for the plaintiff below; upon which the defendant McCoy moved to set aside the verdict, as contrary to the evidence, and for a new trial; which motion was overruled, and the case is thereupon brought here.

It does not clearly appear to what cause the death of the slave is to be attributed, but it could not have been caused by

the whipping which McCoy ordered. It might have been caused either by the wounds on her head, or by apoplexy, under the opinion of the physician. But that matter is settled by the verdict of the jury, who must have concluded that the wounds on the head were the cause of the death, and that they were inflicted by the overseer while in the kitchen; and this must be taken as established. There is no evidence whatever to show that these wounds were inflicted by the direction or sanction of McCoy, or that he expected any difficulty or necessity for violent measures when the overseer was sent by him to arouse the slave. For all that appears, the violence of the overseer was entirely unauthorized by McCoy, and the result of the overseer's imprudence. Nor does it appear that McCoy was apprised of the wounds on the head when the woman came to him for protection. The jury must have thought the beating, by the wounds on the head, unnecessary in the exercise of the overseer's rightful authority; for if it had been necessary, as in self-defence, from the violence of the woman, his conduct would have been justifiable. Their conclusion, then, must have been that the beating was unnecessary, wilful, and malicious. The question, then, arises, Was the employer liable for such conduct?

This point was much considered in the leading case of *McManus* v. *Crickett*, 1 East, 106; and Lord Kenyon, after adverting to the authorities upon the subject, concludes, "that when a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and his master will not be answerable for such act." Judge Story states the rule thus: "The principal is not liable for the torts or negligences of his agent in matters beyond his agency, unless he has expressly authorized them to be done, or he has subsequently adopted them for his own use or benefit. Hence it is that the principal is never liable for the unauthorized, wilful, or malicious act or trespass of his agent." Story, Agency, § 456. It is immaterial whether or not the tortious act be committed while the agent is engaged in the rightful business of his employer, which

he is attending to by his direction; for if he transcends his authority while so engaged, his acts do not bind his employer, unless sanctioned by him. These principles have been sanctioned in the case of *Harris* v. *Nicholas*, 5 Munf. 483, which was a case presenting a state of facts similar in effect to this. The court held that the defendant was not liable, because the act of the agent was "neither authorized by the defendant, nor committed in the usual and proper course of his duty as agent, but was a wilful and unauthorized trespass." And the rule is laid down in still stronger terms in 2 Starkie, Ev. 34, thus: "Evidence of a wilful trespass by the servant will not show that the master is a trespasser, without express evidence that the act was done by his sanction; for an authority to commit a trespass cannot be implied." We do not say that the sanction of the employer may not be shown by circumstances from which it may be inferred; but no such circumstances appear here.

Upon these principles, there was no evidence to justify this verdict; and, reluctant as we are to disturb the verdict of a jury, upon the ground of an erroneous view of the evidence, it becomes our duty to do so, when it appears that in no proper view of the evidence can the law support the verdict.

The judgment is reversed, and the case remanded for a new trial.