## DAVID CLARKE v. A. C. EDWARDS.

1. AGENCY—UNAUTHORIZED ACTS—THIRD PARTIES.—C. consigned five barrels of
whisky to P., who transferred them to E., to secure a debt owing to P. & R., a firm
in failing circumstances, of which P. was a member, asserting that C. had authorized
him to use the whisky, or its proceeds in his business. C. had not so authorized him,
and had no knowledge of the representations made by P. to E. E. knew the relations
of consignors and consignee or principal and agent between C. and P. *Held:* The
transfer conveyed no title to E., and trover may be brought by C. to recover the
whisky from E.

2. INSTRUCTIONS—MAY BE TOO NUMEROUS.—Instructions given in great numbers
cannot be injurious, but are objectionable in practice.

3. SAME—UNWARRANTED HYPOTHESIS.—Instructions which present hypothetical
cases unwarranted by the evidence are erroneous.

Error to the circuit court of Lauderdale county. HANCOCK, J.

The facts appear in the opinion of the court and, assign-
ment of errors.

*S. A. D. Steele,* for plaintiff in error.

The first error assigned is the overruling the motion for a
new trial; we propose to consider the causes of the motion in
their order.

I. The first instruction is in these words: " If the whisky was the property of the plaintiff, and Prewett had no authority to pledge it for the payment of his debt, or the debt of Prewett & Roberts, then the law is with the plaintiff." Story on Agency, § 113, and note 5. If an agent exceed his authority, his principal may proceed *in rem* for the recovery of the goods. Story on Agency, § § 165, 224, 226. A person dealing with an agent is bound to know˙ the extent of his authority. Schimmelpennich v. Bayard, 1 Pet., 290. These authorities abundantly sustain this instruction, and it was error to refuse it.

II. The agent can do no act that would be beneficial to himself, and detrimental to his principal; this is the substance of the 4th charge, which was refused. Murphy v. Sloane, 24 Miss., 660; Story on Agency, §§ 210, 217.

The principle of the 6th instruction—that to sustain the defense of innocent purchaser, without notice, the defendant must show that he used due diligence to inform himself, is fully sustained by the authorities cited. In this case this instruction was peculiarly pertinent. Edwards admits notice that the whisky was the property of Clarke, and hence he was put on inquiry, and is chargeable with all that the inquiry might have led to.

III. The instructions given for the defendant were erroneous.

1st. The 2d charge is, that parties engaged in a general mercantile business, are to be treated by the public, and their creditors, at the owners of all the goods in their possession, or consigned to them.

. The doctrine of *caveat emptor* applies to goods consigned, with peculiar force unless the agent pursue his authority strictly, the sale of the goods is void. The pledging the principal's goods for the debt of the agent, is tortious, and without any fault of the owner, and as such, cannot take away his right, and it is not material whether the purchaser knew of the agency or not. Warner v. Martin, 11 How. U. S., 224; 1 East, 337; 6 ib., 17; 2 Smith, 207; 6 East, 538; 7

ib., 604, 5, 6, 7 ; 1 Maule & Selw., 140,147 ; 4 Moore, 36 ; 2 Ves., jr., 213.

The instruction was pertinent—was not impertinent to the evidence, and should have been refused. Edwards having notice, is charged with all the knowledge to which this notice might have led. Story on Agency, §§ 70, 73, 81, 224. Schimmelpennich v. Bayard, 1 Pet. U. S., 264.

2d. The third and sixth charges for the defendant are identical. They affirm, without qualification, that the principal is bound by the act of the agent. Goods consigned for sale cannot be bartered or exchanged, or pledged for the debt of the agent, and the disposition of the goods, otherwise than in conformity with the authority given, would be void and confer no title. Story on Agency, §§ 224, 225.

If the sale is by a factor, the purchaser is bound to know that he, the agent, cannot pledge, deposit, or sell the principal's property for his own debts. If the circumstances are such that a man may infer that he is dealing with an agent, it is sufficient. Dunlap's Pal. Agency, 227. The proof is clear that Edwards knew he was dealing with an agent. We insist that the court intends to announce the legal rule in the first part, the latter part is intended to have reference to a state of facts that does not exist, and in fact, the evidence furnishes no judicate for the instruction. But if they do exist, the latter part does not modify or qualify the unqualified declaration that the principal is bound by the act of his agent.

It may also be insisted that the first charge for the defendant qualifies this. We confess our inability to comprehend how a correct charge can be said to qualify an incorrect one, when they are both given, and one must be presumed to have had as much influence on the minds of the jury as the other. When the evidence presents doubts as to the material facts involved, and the court instructs an erroneous rule of law upon a point pertinent to the issue, the instruction will be presumed to have had its weight with the jury. Harper v. Tapley, 35 Miss., 506.

3d. The seventh and eighth charges are, in substance, that the fraudulent act of the agent will not affect the purchaser unless he is guilty of fraud. But we insist that the principal is not bound by the fraudulent act of his agent. 1 Story on Contracts, 210 § 135.

4th. The eleventh charge is, that if Edwards had reasonable ground to believe that Prewett was authorized to dispose of the whisky for his own benefit, by the representations of Prewett, or the conduct of Clarke, then he had a right to buy the whisky from Prewett or the person to whom he had sold it.

The authorities lay it down, without qualification, that in limited agencies, if the agent exceed the special and limited authority conferred on him, his acts are mere nullities, unless the principal has held him out as possessing a more enlarged authority. Boyd v. Lambeth, 24 Miss., 433; Fenn v. Harrison, 3 T. R., 762; 15 East, 408; ib., 411; ib., 42; Story on Agency, § 126; Smith on Merc. Law (3d ed.), 107, 108; 2 Kent (10th ed.), 358; 15 Johns., 44; 18 ib., 363; 3 Conn., 172; 6 Cowen, 354; 5 Yerger (Tenn.), 71; 2 Sandford's Ch. R., 325; 5 Ech., 91; 3 Foster, 360; 20 Barbour, 493, 494; 4 Wis., 144; 4 Dyer, 480.

Prewett being a special agent, no representation of his beyond his authority, could bind Clarke. The representations and declarations of an agent can only bind his principal within the scope of his authority. Story on Agency, § 136; Hannay v. Stewart, 6 Watts, 489.

As Clarke is not shown to have said or done anything to induce Edwards to rely on the representations of Prewett, he could not have been misled by Clarke's acts.

The jury found contrary to the evidence and instructions. 1st. What is necessary to entitle the plaintiff to recover? He must prove that he is the owner of the whisky, and that there had been a conversion. On the first point the proof is clear. To establish the other, it was proven that the property was demanded by a writ of replevin; that the defendant admitted his possession, stating that it was locked up in the

back room of his store, but that he would not allow the sheriff to levy the writ. What is a conversion? It is held by all the authorities that a demand of possession and a refusal to give possession is a conversion. The writ of replevin was a demanded. But the defendant was guilty of a conversion in taking the whisky in pledge for the debt of the agent, when he had no right so dispose of it. McCombie v. Davis, 6 East, 540.

This was a complete cure for recovery. Let us examine the defense. It is proven that the whisky was pledged for a specified time as security for the debt of Prewett & Roberts; Prewett being the plaintiff's agent, the defendant admitting that he knew of the agency. This is the proof in a nutshell. Under the charges and evidence, there could have been but one proper finding.

The jury returned their verdict without reading the instructions.

This cause in the motion is intended to raise the question of deliberation on the part of the jury, and their conduct during their retirement. The evidence on this point, is the affidavit of the bailiff in charge of the jury. The reason given by some of the jurors for finding for the defendant was, that if they waited to investigate the case, and returned a verdict for the plaintiff, they would have to assess the value of the whiskies, and would be left by the train. The law is well settled, that misconduct on the part of the jury, is good cause to set aside their verdict. The action of this jury shows such a counter disregard of duty, as well as a disregard of the rights of the plaintiff, that we do not feel inclined to add a single argument. 1 Young & J., 420 ; 2 Tidd's Prac., 910. The court should have ruled out McKenzie's testimony. McKenzie's testimony did not in any way identify the property, and might have mislead the jury.

*T. J. & F. A. R. Wharton,* for defendant in error.

We think that the judgment in this case should be affirmed. It was a case of conflict of evidence, and, to some extent,

may be said to have involved the credibility of the witnesses who were examined.

The jury are presumed to have personally known all the witnesses. They were from the vicinage. They had opportunity of observing the demeanor of the witnesses on the stand, and of judging of their credibility from their manner of testifying whether they were witnesses partial to the party calling and reluctant to testify.

This being a case of conflict of evidence, the court will not disturb the verdict, unless it be palpably and grossly wrong, so much so, indeed as to shock the moral sense. 31 Miss., 314.

If illegal evidence was admitted, or erroneous instructions given, still the verdict will not be set aside, if there is sufficient legal evidence in the case to support the verdict. 1 S. & M., 22; 2 ib., 298; 8. ib., 226; 37 Miss., 477; 1 Kelly, 574; 1 Graham & Waterman, 246; 2 ib., 634.

The question in this court is not, is the verdict clearly right, but is it clearly wrong. 30 Miss., 369.

If justice has been done and it is unlikely that a different verdict would be found by another jury, a new trial will not be granted. In the case last cited, the court say the question is, was the verdict warranted by the evidence; but what is meant—not whether it was clearly right, but was it manifestly wrong? They proved to answer the question as follows: "Admitting that the evidence is not as certain and direct as it is desired evidence should be, yet having been weighed and considered by a jury, supposed always to be conversant with the common transactions of life, and the motive which influence her in action, and hereby pronounced sufficient, their verdict must stand, unless a clear preponderance of the evidence is shown the other way. We are not prepared to say which is the case. Twelve minds, perhaps differently constituted, viewing the evidence in different lights, have concurred in pronouncing that, considered as a whole, the evidence establishing the main part put in issue by the pleadings." 30 Miss., 387, 504; 32 ib., 126.

Even in criminal cases, in which more stringent rules are supposed so be appplied to verdicts of guilty, the foregoing principles have been recognized. In the case of Cicily v. State, reported in 13 S. & M., 213, the plaintiff in error was convicted of murder, and sentenced to be hung; the court— Smith, chief justice, delivering the opinion, which is one of the most masterly discussion of the principles of criminal law anywhere to be met with—held "that in criminal or in civil cases, the verdict of a jury upon the facts will not be disturbed, unless approved by a decided preponderance of the evidence, or based upon no evidence whatever." 3 How. R. (Miss.), 219; 1 S. & M., 381; 8 ib., 643; 10 ib., 313.

TARBELL, J.:

In 1868 David Clarke instituted this suit against A. C. Edwards, in the circuit court of Lauderdale county. The declaration is in trover for a quantity of whisky. Plea, not guilty. Jury and verdict for defendant, at the February term of that court, 1870. Judgment accordingly for costs against plaintiff, who moved for a new trial, on the following grounds:

1st. The court erred in refusing the first, fourth and sixth instructions asked by plaintiff.

2d. The court erred in giving the instructions asked by defendant.

3d. The jury found contrary to law as charged by the court and the evidence.

4th. The jury made the verdict without any deliberation, and without reading or examining the instructions given by the court, as the plaintiff is proposed to show, and he tenders, with his motion, proof of the fact.

F. V. Oliver, as witness, stated that he was the bailiff of the jury to whom was submitted the case of Clarke v. Edwards, and that said jury took no time to deliberate or examine the instructions of the court given in said case, but on the contrary, hurriedly entered a verdict for defendant, in order to enable some of said jurors to take the train to Meridian, which at the time was about starting, and that the rea-

sons given at the time by some of the jurors was, that if they, the jury, waited to investigate the case and found for plaintiff, they would have to assess the value of the property, and would be left by the train. Four jurors who made this remark were colored jurors.

This motion was overruled and plaintiff excepted. Having brought his case to this court, the plaintiff here assigns for error :

1st. That the court erred in overruling the motion for a new trial.

2d. The court erroneously refused to exclude the testimony of McKenzie.

L. A. Prewett testified that he was one of the firm of Prewett & Roberts, formerly doing a general mercantile business in Marion; in 1867 plaintiff shipped witness fifteen barrels of whisky, to be sold on commission; he was instructed to sell for cash; Prewett & Roberts were owing a debt on a note in St. Louis; that note had been sent to defendant for collection; witness turned over to defendant five barrels of the whisky to secure the said note, telling defendant if plaintiff called for the whisky before the payment of the note, the plaintiff must have it, as it was his property; Prewett & Roberts failed in the fall or winter of 1867, and went into bankruptcy.

Upon cross-examination, this witness denied having stated to defendant that he was authorized to use the whisky or its proceeds for the payment of his debts, or the debts of his firm, without the special permission of his principal, plaintiff in this suit; but did tell defendant that plaintiff was a particular friend of his and had told him if he sold the whisky and he wanted to use a portion of the money, plaintiff would probably loan him a portion of it; and he further stated that he had no authority from plaintiff to use the property or its proceeds without the special consent of plaintiff, which consent was never given him. A short time after the whisky was turned over by him to defendant, the party from St. Louis to whom Prewett & Roberts were indebted, visited

Marion; at that time defendant had sold one of the barrels of whisky; defendant and witness called at the hotel to see that creditor; defendant paid over to him (witness) one hundred dollars, which the defendant said was the proceeds of the sale of the barrel of whisky; witness paid the money over to this creditor of Prewett & Roberts; witness was positive defendant handed him the money and he handed it over to the creditor.

J. B. Hancock testified that he heard Prewett say to Edwards that the whisky belonged to Clarke, and if Clarke called for it, he must have it; at another time heard Prewett tell Edwards the same, and Edwards said Prewett had told him the same before.

W. F. Alford testified that he was deputy sheriff in 1867; in the fall of that year a writ of replevin was placed in his hands, sued out by Clarke, to remove the four barrels of whisky of Edwards; went to Edwards' store and asked him about the property; defendant admitted he had the property locked up in his back room, but would not let witness levy upon it.

W. P. Evans testified, that about the time of the failure of Prewett & Roberts, a portion of this same invoice, which was in the store-house of Prewett & Roberts, at the time the assignee in bankruptcy of the firm took possession of their estate, was turned over to witness as the agent of plaintiff, Clarke.

The defendant testified, that in 1867 a claim against Prewett and Roberts was sent him for collection by a house in St. Louis, amounting to about $1,000. Mr. Prewett turned over to him, as security for the debt, five barrels of whisky. When one of the St. Louis firm visited Marion, one barrel of the whisky had been sold, and witness, at the interview between Prewett, witness and the St. Louis man, paid the latter $120, the proceeds of the barrel of whisky sold, on the debt due from Prewett & Roberts, and it was agreed between the parties that the remaining four barrels should remain in possession of the plaintiff twenty days, and if, at the expiration of that time, the debt was not paid or settled, the

whisky would be the property of the St. Louis firm. Accordingly the whisky was taken and remained sometime beyond the time agreed on. The debt being still unpaid, defendant wrote to the St. Louis firm of that fact, receiving in reply instructions for defendant to take the whisky at a price fixed or ship it to Jackson, Tennessee. Defendant took the whisky at $150, the price fixed by the St. Louis firm. Sometime afterward the plaintiff came to Marion and brought his action of replevin against defendant for the whisky, but failing to get the writ executed, he brought this suit.

On cross-examination, this witness testified that Prewett told him before, and at the time this whisky was pledged, that this whisky was sent him to sell on commission by his friend, Clarke, of Mobile, but at the same time told him that Clarke was a particular friend of his, and had sent this whisky to aid him in the business in which he and Roberts were engaged. Prewett & Roberts gave no notice either by advertisement or in any public manner, that they were agents of Clarke.

John McKenzie, introduced by defendant, testified that Prewett told him in 1867, that a friend of his in Mobile had shipped him fifteen barrels of whisky, and that his friend authorized him to use the proceeds of the same in his business, and as his firm was hard pushed for money, he would sell cheap. The whisky deposited with defendant, was of the same lot Prewett offered to sell witness.

The plaintiff moved to exclude the testimony of the witness McKenzie, from the jury upon the ground that there was no identification by the witness; that plaintiff was the friend Prewett alluded to, which the court refused to do, to which plaintiff excepted.

Our theory of this case renders unnecessary a consideration of the numerous questions presented by counsel. It is not disputed that the plaintiff was the owner of the property in controversy, when it was consigned to Mr. Prewett. The consignee was authorized to sell for cash only. Of the ownership of plaintiff, and the agency of Prewett, the defendant

had notice. In asserting control and ownership over this property, and in converting it to his own use, the defendant relied upon the representations of Prewett, that the whisky was consigned to him by his particular friend, the plaintiff, who would allow him to use it, or its proceeds, in the business of Prewett & Roberts. The defendant relied upon these representations and took the property at his peril. Upon the trial, Prewett testifies on oath, that the plaintiff never authorized him to sell otherwise than for cash, and asserts positively on oath, that the plaintiff never gave him any authority to use the property, or its proceeds, in his own business, or in that of his firm. No evidence whatever, direct or remote, brings the representation of Prewett to the knowledge of the plaintiff, nor is there even a hint of any act, or declaration of the plaintiff indicating the truth of the representations of Prewett. It would certainly be unjust if the owner of property could be thus easily divested of his title. Fortunately, the law is not thus uncertain, nor susceptible of such perversion. Most assuredly, the true owner cannot be deprived of his own by the mere idle, unsworn, unsupported, if not untruthful, and unauthorized statements of an agent, himself financially embarrassed, and struggling to save his from bankruptcy; nor, especially, as in this case, where the defendant knew the relations existing between plaintiff, and Prewett, as consignor and consignee, or principal and agent. The transfer of the whisky to defendant by Prewett to secure a debt owing by Prewett & Roberts was unauthorized and conveyed no title. Story on Agency, §§ 78, 113; Story on Bail., §§ 325, 326; Story on Sales, §§ 104; 26 Miss., 487; 24 Miss., 688.

It follows, from the view we take of this case, that the instructions of the court to the jury, for the defendant, were erroneous. We observe of these, that, as in too many cases coming before us, they are too numerous and objectionable in practice. Given in such numbers, they can be but injurious. In this instance, they present hypothetical cases, unwarranted by the evidence. The errors in the instructions,

in this instance, will be inferred from the foregoing view of
the rights of the parties.

The judgment of the court below is reversed, and the cause
remanded.