SLAUGHTER v. HOLSOMBACK.

(Division A.    April 3, 1933.    Suggestion of Error Overruled May 29, 1933.)

[147 So. 318.    No. 30520.]

644

Gilbert & Cameron and Dunn & Snow, all of Meridian, for appellant.

Reily & Parker, of Meridian, for appellee.

648

R. M. Bourdeaux, of Meridian, for appellee.

Argued orally by **Ben F. Cameron**, for appellant, and R. M. Bourdeaux, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appeal is prosecuted here by Mrs. Mackie Slaughter from a judgment of the circuit court of Lauderdale county rendered against her for a substantial sum for personal injuries sustained by Pansy May Holsomback, a minor of tender years. There was also a suit against Albert Slaughter, the son of appellant, and verdict and judgment against him, from which no appeal is prosecuted.

The appellee was injured seriously and permanently by an automobile while she was seated with other small children on some steps leading from the sidewalk up to a yard of a private residence. The car was driven by Albert Slaughter, the son of Mrs. Mackie Slaughter. The latter owned the car.

At about twelve thirty on day of the injury, Albert Slaughter, who for the most part lived with his mother, telephoned his mother requesting her to send her car with her chauffeur to bring him to lunch. She complied with that request. The car was sent to the store in the city of Meridian where Albert Slaughter was, and he was transported in his mother's car to her residence, where he had lunch. About one P. M. he requested his mother to allow the chauffeur to carry him to town in the car, and she acceded to the request, instructing the chauffeur to drive her son "to town" and to "come straight back," or to "hurry back"; both expressions occur in the testimony of the mother and son. The mother desired to use the car later. She testified that she had instructed the chauffeur, who had been employed for some time to operate a car for her, not to permit her son Albert to drive the car unless she accompanied him. She emphatically stated that she did not deny her son the privilege of driving the car because of his incompetence as a driver or because of his being addicted to drinking intoxicating

liquor. She gave as her reason that she paid a chauffeur to do it, and that about a year or longer before she had been offended by her son's marriage to a woman to whom she strenuously objected, and that she did not want him driving his wife and her associates. Albert, and his wife had been living apart for about a year, and had been divorced for some time.

The chauffeur was a negro about twenty-three years of age. Albert Slaughter was about twenty-eight years of age. The mother had frequently allowed the son to drive her when she accompanied him in the car, especially to dinner on Sunday when the chauffeur was excused.

After she granted permission and instructed the chauffeur to drive her son to town and "hurry back," the son and chauffeur proceeded to the garage. The chauffeur drove the car out and stopped for the son to get in, whereupon the son said to him, "Move over, Bo, and let me drive." Bo moved over without protest, and the son, accompanied by the chauffeur, took the wheel, drove away from the house, stopped at a drug store where he left the car and bought a cigar, invited a friend to ride with him, came back, took the wheel again, and drove the car towards the southern part of the city of Meridian. Witnesses testified that Albert Slaughter, accompanied by the chauffeur, who was seated on the front seat with him, was driving at a rate of speed of from fifty to sixty-five miles an hour, and as he undertook to negotiate a sharp curve the car left the paved street, went over a water main, struck a fire hydrant, and the marks of the car showed that it proceeded on the sidewalk to the place where the children were seated, a distance of one hundred twenty feet, ascended the steps, struck the children, knocking them under the car, and thereupon Albert stood around while ladies rescued the children from beneath the car, and that he evinced no interest in caring for the children.

An officer testified that Albert Slaughter was not normal when he arrived on the scene immediately after the injury; that he smelled liquor on his breath; and other witnesses testified that there was a strong odor of liquor on his breath after they put him in jail, which they promptly did.

Mrs. Slaughter was introduced as an adverse witness. She testified that she did not know that her son was a reckless driver, and did not know that he drank to excess, and she adhered to this statement after a most grueling examination. Later she was recalled as a witness and admitted that she knew she had paid a fine about a year before for her son on a charge of drunkenness. She further admitted that she called on the officers at one time to recover her car which had been taken away by her son for some days. She admitted that she knew her son had been adjudged an habitual drunkard and sent to Jackson for treatment. She also admitted that on the night of his marriage she knew he was drinking, but said he did not drink in her presence.

Several witnesses testified that the general reputation of Albert Slaughter was that of an habitual drunkard, or a person who was addicted to the use of intoxicating liquors.

Albert Slaughter testified that he had not driven over twenty-five or thirty miles an hour; that he undertook to slow down as he negotiated the curve, and that after the wreck there was something discovered broken about the steering gear of the car. He denied that he was drinking at the time of the accident, and stated that it was raining when he left his mother's home, and the street on which he was driving at the scene of the accident was wet. He was engaged in no business, and had no place of business, and no particular appointment or place to go at the time he left home. However, in driv-

ing to the point in south Meridian, his purpose was to go to a swimming resort and find a hat he had lost the night before.

The chauffeur, Bo Hicks, was not offered as a witness in the case.

There is evidence in the record tending to show that Albert Slaughter on other occasions had driven the car accompanied by the chauffeur when his mother was not present; however, this is not clear. It is not shown that the mother was engaged in any business or used the automobile for any purpose other than the convenience and pleasure of herself and her son.

The main assignment of error presented in this case is that the court below erred in not granting the appellant, Mrs. Mackie Slaughter, a peremptory instruction. As submitted to the jury by the court for the appellee, the doctrine of respondeat superior was invoked.

It is first insisted that the evidence wholly fails to sustain the allegation that Mrs. Slaughter permitted the use and operation of her car by her son, and much stress is laid by appellant's counsel on the fact that the mother, the owner of the car, had instructed her chauffeur not to permit the son Albert to drive the car, and that the record does not disclose that Mrs. Slaughter knew that her son was an incompetent driver. The argument on these propositions is to the effect that Mrs. Slaughter as owner had done all she could to prevent her son from operating her car. Without repeating the evidence on this proposition, we think it is clear that the jury were warranted in drawing the inference from all the evidence of Mrs. Slaughter that she knew, or should have known, or might reasonably have anticipated that when she placed the car in the hands of a negro chauffeur younger than her son, the son would dominate the situation. The reason she assigns for declining to permit her son to drive the car, except when she accompanied him, could well have been rejected by the jury in the light of all the

evidence; that reason had disappeared. A divorce had been granted the son; he was separated from his wife, and all the circumstances show that Mrs. Slaughter could not have been actuated by the motive which she assigned for refusing to permit her son to operate the car. So far as her instructions to the chauffeur are concerned, while not positively contradicted, she is confused and contradictory in her own statement. As an example, after testifying that she did not know that her son drank to excess, on her reappearance on the witness stand she was forced to admit that her son had been adjudicated an habitual drunkard and had been sent away from his home for treatment. She saw him drinking on the night of his marriage; she knew that she had paid a fine imposed on him for intoxication. In the light of these contradictions in her own evidence, the jury were warranted in rejecting her statement that she had instructed her chauffeur and her son that the latter should not be permitted to drive the car in her absence therefrom. We think there is no merit in these contentions on the facts of the case. Herrman v. Maley, 159 Miss. 538, 132 So. 541, 542; Chapman v. Powers, 150 Miss. 687, 116 So. 609; Anderson v. Daniel, 136 Miss. 456, 101 So. 498.

It is next insisted that the car in the custody of the chauffeur was not being operated in furtherance of the master's business or in the line of duty of the chauffeur at the time of the accident. It cannot be presumed that the relation of master and servant existed between Mrs. Slaughter and Bo Hicks, the negro chauffeur; that relation must be established by evidence. In the case at bar there is no difficulty in this connection; the relation of master and servant between the owner and the chauffeur is clearly established. It is also clearly established that Mrs. Slaughter was the owner of the automobile. Since that relation is established, then the presumption is that the act here under review was in furtherance of the master's business, and the act of the servant is pre-

sumed to be in the line of his appointed duties, and the burden is upon the master to show that the particular act was not within the line of the servant's appointed duties or in the furtherance of the master's business. See Barmore v. Vicksburg, S. & P. Ry. Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Huddy on Automobiles (6 Ed.), p. 867; Stumpf v. Montgomery, 101 Okla. 257, 226 Pac. 65, 32 A. L. R. 1490.

The instruction given to the chauffeur on this particular occasion, as detailed by Mrs. Slaughter and Albert Slaughter, was that the son be carried to town in the automobile and "come straight back," or "hurry back." The point of destination was, under this instruction, left by the master to the discretion of the chauffeur and the son. The master's purpose in this case was to have the son delivered at a point in Meridian suitable to him. The gist of this instruction and the potency of it was that, having permitted the use of the car by the son, the chauffeur was to return at once to the master with the car. In other words, the jury had a right to view this instruction as being one pointed at time rather than destination. To town, as used in the evidence, was indefinite, uncertain. The son had no place of business, he had no particular place to go, and the only place he selected was where he could secure the return of his hat. Counsel for appellant cannot, in the light of this testimony, limit the destination to a particular drug store, or to a particular business place in what may be considered the business, as distinguished from the residential, section of Meridian. This plain statement of deductions to be gathered from the evidence in this case appears to us to be unanswerable. There is no question of deviation of the servant from the performance of his master's business; there was no lending of the car to the chauffeur; he acted under orders from the master, and if the orders of the master had directed the chauffeur to transport the son to a designated point, as for instance, Glicco's store, or the

courthouse, or other designated place or point in Meridian, then the question might arise as to whether, or not there was such a deviation or departure from the master's business as to relieve the master of liability. In this case the servant was engaged in no business of his own. It was part of the master's business and purpose to have the son transported in her automobile, and the only limitation as to destination that could possibly be put upon the language which we have quoted is that it was confined to some point in Meridian, or in town. The argument that it meant to the business section is illogical. It is true that Mrs. Slaughter lived on the highway leading out of Meridian in the northern section, and that the business section was between her home and the point where this injury occurred.

The rule invoked by appellant fails. She says there is evidence showing every detail of what the negro driver was directed to do and when and how to do it; hence there is no place for the presumption that the act was in furtherance of the master's business. No detailed instructions were given this driver; no particular point was assigned. The pith of the instruction was to hurry back when the son had completed his journey; necessarily the point of destination was left to the inclination of the son.

It is next insisted that even if the evidence shows that Mrs. Slaughter knew that her son was an habitual drunkard, yet it does not follow that therefore he was known by her to be an incompetent driver. The rule as to an incompetent driver is tersely and accurately stated in Am. L. Inst. Rest. of the Law of Torts, section 260, as follows: "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should

expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.''

We unhesitatingly and unreservedly declare that a person who has the general reputation of being an habitual drunkard is an incompetent driver, and that one who knows, or should know, facts which lead to the belief that one is an habitual drunkard should know that such person is just as unsafe a driver as an imbecile or a baby. When an intoxicant is enthroned, reason is dethroned, physically and mentally. An automobile is not a dangerous chattel or instrumentality per se. But an automobile propelled by gasoline upon the public streets of a populous city under the exclusive control and management of an adult drinking at the time to excess is as dangerous to the traveling public as a fool with a machine gun pulling the lever which hurls bullets down the thoroughfare. Witness the case at bar.

The son's liability is conceded in this case by the appellant, but in the main she seeks to avoid liability because of her specific instructions. One witness said it was generally known that Albert Slaughter was a drinking man and stayed under the influence of whisky. Another said that he had the general reputation in the city of Meridian of being an habitual drunkard. Another said he had the reputation of being a man who drank a lot of whisky. A man may be a careful driver, competent and vigilant when he is perfectly sober, and when he imbibes to excess, it is human experience that he then becomes incompetent and reckless. One who acquires the reputation such as is detailed here must be held to be an incompetent driver, and the mother's knowledge of this situation is too plain for any mistake to be made about it.

Albert Slaughter was an unsafe and incompetent driver as demonstrated by the facts of this case and by all the testimony, except that of his mother and himself, who have a powerful interest in the result. The use of in-

toxicating liquors combined with the operation of an automobile produces the most dangerous sort of unreliability and incompetency to all persons on the highway or adjacent thereto. This little child was in a safe situation, removed from the highway, and sitting on the steps elevated above the sidewalk. This incompetency to be trusted with the instrumentality or chattel is just as certain as any other incompetency, and the owner of the automobile who permits one addicted to the use of intoxicating liquor to drive such car is just as reprehensible in the eyes of the law as if she had committed the instrumentality to the hands of a child of tender years, and the owner is put on notice that one habitually addicted to the use of intoxicating drinks is likely to have an accident occur. It is the duty of the master to see to it that the instrumentality which would be rendered dangerous in the hands of an incompetent is not placed in the hands of an habitual drunkard. A failure to perform this duty in this respect renders the master liable for the negligence which ensues. There are enough facts and circumstances admitted by Mrs. Slaughter, the owner of the car, to lead one of reasonable mind to the inevitable conclusion that she knew that her son would take charge, dominate, and control the negro chauffeur, and her consent thereto is implied. "Ne'er consenting, she consented." 2 Berry on Automobiles (6 Ed.), section 1327; 3, 4 Huddy Ency. of Automobile Law (9 Ed.), section 42; Mitchell v. Churches, 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132; 1 Bailey Personal Injuries (2 Ed.), p. 890; Crowell v. Duncan, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425.

It is next insisted that if an habitual drunkard is an incompetent driver, and if the chauffeur upon this occasion, at the time of this injury, was engaged in the performance of the duties of the servant in the course of his employment and in the furtherance of the master's business, yet appellant is not liable because at the time of

this accident the chauffeur was not operating the car, but had relinquished the operation thereof to the son. This is the most difficult question presented in this case.

The authorities are in conflict as to whether or not the master is liable when the servant has called in another to perform his duty, either from stress of circumstances or from the voluntary relinquishment of the performance of the duty. It was the duty of the chauffeur, Bo Hicks, to drive this car at the point and at the time this accident occurred. No one would dispute that it was negligence for the chauffeur, under all the facts of this case and knowledge of which must be ascribed to him, to relinquish the wheel to Albert Slaughter at the inception of the trip before leaving the home of Mrs. Slaughter. He, as well as the owner, is charged with the knowledge that Albert was an incompetent driver, and the jury were warranted in believing that the chauffeur permitted the car to be driven at a time when Albert was under the influence of intoxicating liquor. He relinquished the entire control of the operation of the car to this son. He awaited the son's pleasure while the latter obtained a cigar and a guest at Glicco's place of business. According to appellee's evidence, he drove with him while Albert Slaughter was under the influence of liquor to the southern part of Meridian, sat supinely by so far as this record is concerned, and permitted the car to be negotiated around a sharp curve at a rate of speed approximately fifty to sixty-five miles an hour. That the chauffeur was negligent there is no room for debate. Sections 5569, 5571, and 5579, Code 1930.

The doctrine of respondeat superior is that he who acts through another is himself the actor. Mrs. Slaughter was the master. Hicks, the chauffeur, was the servant. The master's business was to transport the son to a destination in the town of Meridian selected by him. The servant, a negro twenty-three years old, was placed under the general direction of the son who was known,

or should have been known as found by the jury, to be an incompetent driver. On the initiation of the trip the chauffeur did the master a wrong by surrendering control voluntarily of the automobile to this incompetent person. He further did wrong and was guilty of negligence when he permitted the car, while being operated in the course of his employment, in the furtherance of the master's business, and in the line of his duty, to be driven around a sharp curve at an unsafe and dangerous rate of speed, which rate of speed together with entire absence of control of the car was the proximate cause of the injury to the appellee. The servant was present, seated by the side of the son, while these acts of negligence were being committed. The act of the son in this situation was the act of the servant. The act of the servant was that of the master.

We have here no question of parent and child, neither is there any question of family purpose doctrine; that doctrine is repudiated in this state. We view this case as though Albert Slaughter was not related to Mrs. Slaughter, the appellant.

It is idle to say that because the servant violated the instruction that the son was not to be permitted to drive the car the master is absolved. For instance, the master might instruct the chauffeur, who was engaged in driving an automobile on the public highways of this state, that he was to obey each and every law of the road as provided by statute, and thereupon the master would be permitted to defend himself from all character of negligence of the servant. No such rule obtains. The only question is whether the negligence of the servant was the proximate cause of the injury at a time when he was acting within the course of his employment, engaged in the furtherance of the master's business, and within the line of his appointed duties.

We have viewed this case in the light of the declaration, evidence, and instructions granted by the court to

the appellee, by which the appellee, the plaintiff in the court below, assumed a greater burden than is imposed by law, as we shall presently see. The true rule applicable to the facts in this case may be stated as follows: Even though the chauffeur permitted another to drive an automobile for him on the public highways of this state when he was present and consenting thereto, the master is not relieved of any negligence which is assignable to the driver if the chauffeur remained in the automobile with general power of supervision and control, where the substituted agent was incompetent by reason of want of skill or otherwise.

The above rule was announced by Judge CARDOZO in the case of Grant v. Knepper, 245 N. Y. 158, 156 N. E. 650, 651, 54 A. L. R. 845, in which case the master sent out his motortruck accompanied by a salesman to deliver merchandise. On the return trip the salesman asked to be allowed to drive the car, though he had no license so to do. He assumed control of the wheel while the driver was on the running board. After driving some distance the salesman ran the truck into a car parked along the roadway. The owner of the car sued the owner of the truck, and it was held to be a case for the jury. Judge CARDOZO announced the rule we have above set forth, and cited Cf. Lloyd v. Grace, S. & Co., [1912] A. C. 716, 5 B. R. C. 498, Ann. Cas. 1913B, 819—H. L., quoting Barwick v. English Joint Stock Bank, L. R. 2 Exch. 259, 12 Eng. Rul. Cas. 298—Ex. Ch. He then said: "If the driver had left the seat and let the car proceed without any one at the wheel, the defendant would have been liable for any damage caused thereby. He is not less liable when the driver places at the wheel an incompetent substitute (Pollock on Torts, p. 87), or fails to intervene thereafter with protest or command when protest or command would be timely to avert the loss (Dowler v. Johnson, 225 N. Y. 39, 3 A. L. R. 146, 121 N. E. 487). 'Co-operation may be inferred from acquiescence where there is power to restrain.'

Dowler v. Johnson, supra. The duty rests upon the servant with continuing obligation to 'keep control and exclude incompetent meddling' (Pollock, supra). . . . If such negligence exists, and is found to be an effective cause, it does not lose its significance as a basis of liability because it may be found to have combined with the negligence of the substitute.'' The rule applied by Judge Cardozo in the Grant case is that of common-law negligence growing out of the relation of master and servant applying the doctrine of respondeat superior.

An illustration of the application of a broader rule, without the doctrine above, is to be found in the case of Elliott v. Harding, 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128, wherein Chief Justice Marshall announced the broader rule. There are cases to the contrary. The cases supporting the different rules are to be found in 39 C. J. pp. 1271, 1272, and 1273, sections 1459 and 1460, but we confine this opinion to a case where the servant is present and acquiesces in or co-operates with the substitute who is guilty of negligence in the operation of a car.

Appellant cites the cases of McCoy v. McKowen, 26 Miss. 487, 59 Am. Dec. 264, New Orleans, J. & G. N. R. Co. v. Harrison, 48 Miss. 112, 12 Am. Rep. 356, and Yazoo & M. V. R. R. Co. v. Stansberry, 97 Miss. 831, 53 So. 389. The latter case is more nearly in point than the others, but it is so clearly distinguishable from the case at bar as to render it unnecessary for us to devote space to it here.

Appellant complains of instructions granted to appellee and refused her, which we deem unnecessary to note, in view of the fact that we are of opinion that the appellee assumed a greater burden than the law required of her, and the instructions granted were the most liberal views that could have obtained in any jurisdiction in favor of appellant. We think there is no reversible error in this case.

**Affirmed.**