HELEN KATZ and Another, Plaintiffs, *v.* WOLFF & REINHEIMER, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Sixth District, April 18, 1927.

**Motor vehicles — action for damages arising from negligent operation of taxicab — defendant owned taxicab and turned it over with other taxicabs to operator — vehicle collided with plaintiffs while being operated by stranger to whom " operator's " chauffeur on becoming ill had turned over taxicab — defendant liable under Highway Law, § 282-e.**

In this action for damages arising from the negligent operation of a taxicab, defendant who owned the taxicab and had turned it over, with others, to a third party to operate, is liable under section 282-e of the Highway Law, where it appears that the vehicle collided with plaintiffs' automobile while being operated by a person to whom one of said " operator's " chauffeurs, on becoming ill, had turned said taxicab over. Defendant is not relieved by reason of the fact that it had no knowledge of the transfer of control, in the absence of anything to show that the chauffeur violated any instructions in turning the taxicab over to the person who was driving it when the accident happened.

The purpose of section 282-e of the Highway Law is to protect the public and to make an owner liable for an injury caused by the negligent operation of his car, where his implied permission to use or operate it, in his business or otherwise, may be gathered from all the circumstances surrounding its possession by another, at the time it was negligently operated.

ACTION for damages resulting from negligent operation of taxicab.

*Geza Eichhorn*, for the plaintiffs.

*Charles H. Bose*, for the defendant.

MARKS, J.   The defendant was the owner of four taxicabs, and requested one Kurtz, who is known in the taxicab business as an " operator," to take complete charge of them — operate them, hire and discharge chauffeurs, store the cabs in his garage, supply them with gas and oil and keep them in repair.

Kurtz operated them in this manner in conjunction with his own taxicabs.   The chauffeurs whom he hired retained forty per cent of their receipts, and the remainder was applied by Kurtz towards the expense of storage, repairs, etc., and any balance was accounted for to the defendant at the end of the month.

Kurtz hired one Eckes as a driver of one of the defendant's taxicabs.   He gave him no instructions as to his duties.   Eckes had never worked for a taxicab company before, did not know who owned the taxicab which he was given to drive, or who was really his employer, except that Kurtz, a dispatcher at a garage, the owner of which he also did not know, had put him to work.

On the second day of his employment at seven P. M., after riding all day, Eckes turned the car over to one Sullivan.   Eckes testified: " I didn't feel well.   I had a headache and my stomach was bothering me, from riding, I suppose.   My stomach was shaken up and I threw up my food and I felt I wasn't able to drive the car, so I turned it over to this man Sullivan and told him to take care of it for me.   I wasn't able to telephone.   I went home and went to bed."   Sullivan, in an intoxicated condition, later in the evening while negligently operating the cab, ran into a taxicab owned by the plaintiff Helen Katz, which was being driven by the plaintiff Charles Katz.

It does not appear that the defendant took any precaution or exercised any care in the selection of the drivers for its taxicabs but left that matter entirely to Kurtz.

Kurtz testified that he received the cars from the defendant under an arrangement " just to operate them so as to get them off their hands.   They had too much annoyance with them."

A taxicab becomes an instrument of danger and a menace to

life and limb in the hands of an inexperienced or reckless or stupid driver, and yet the defendant saw fit to manage its business in this unconcerned way through an " operator," and to let loose its taxicabs on the crowded streets of New York city, without any knowledge of the experience or competency of any of the drivers who were to be intrusted with the general control and management of them.

Section 282-e of the Highway Law (added by Laws of 1924, chap. 534, as amd. by Laws of 1926, chap. 730) provides that: " Every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

In the case of *Fluegel* v. *Coudert* (244 N. Y. 393) the Court of Appeals held that this section did not render an owner of a car liable for the negligence of his driver, where at the time of the accident he was engaged in using it for his own purpose exclusively, without the permission and against the commands of the owner.

The record in that case shows that the driver had received express instructions to take the car to the garage when the family were through with it for the day, but in place of obeying these instructions he was on his way home to his meal at the time of the accident, which took him in a direction away from that leading to the garage.

The duties of a private chauffeur as in the case cited, usually are limited and prescribed, and for his negligence occurring while acting beyond the scope of his employment where no permission to use or operate the car has been expressly or impliedly given by the owner, or while using the car contrary to the instructions of the owner, the latter is not liable notwithstanding the provisions of section 282-e.

But the driver of a taxicab, intrusted with the possession and absolute and general control and operation of a car, as in the case at bar, and with no instructions whatever as to the manner in which he shall perform his duties, may be presumed to have authority to do all things that he considers essential to the business in which he is employed; and, if guilty of negligence while exercising that general authority, the master should be held liable.

The salutary design of this statute (§ 282-e) is to protect the public and to make an owner liable for an injury caused by the negligent operation of his car, where his implied permission to use

or operate it, in his business or otherwise, may be gathered from all the circumstances surrounding its possession by another, at the time it was negligently operated; and the court should not be astute to discover a flaw in the chain of events leading up to such possession, for withholding the principle of implied permission or implied authority, where the facts fairly warrant the extension of that principle and the application of section 282-e of the Highway Law.

Especially should the principle be extended and applied where the servant acts in an emergency or when suddenly taken ill, and in this condition improperly or excessively exercises his general discretion or errs in his judgment.

It is not the character of the act, nor whether it was done during the existence of the servant's employment, but whether the injury complained of was committed by the authority of the master expressly conferred or fairly implied in the nature of the employment and duties incident to it. The master's liability is not limited to cases where he is present and remains passive, nor to cases where the act is without his knowledge or express authority. (26 Cyc. 1526.)

There is no formula that will aid the court to decide whether at a particular time an act was within the scope of a servant's employment, nor whether a motor vehicle was used or operated with the implied permission of the owner. Whether or not it was so used is to be decided as a question of fact, and in some cases as one of fact and of law. The facts in this case upon which permission of Sullivan to operate the taxicab may be implied are uncontradicted. He was legally in possession of it. He received it from a driver who had general control and discretion over it, the same control as an officer of the defendant would have had.

The defendant had enjoined no caution and suggested no mode of doing the work or returning the cab or procuring aid in case of illness, and Eckes' act in delivering possession of the car to Sullivan cannot be said to be so far beyond the scope of his general discretion or a misuse of it as to relieve the defendant from liability for Sullivan's negligence, when the intent and purpose for which Eckes delivered the car to Sullivan are considered.

An act is within the scope of the servant's employment where necessary to accomplish the purpose of his employment, and intended for that purpose, although it may appear that the act causing the injury was in excess of the powers actually conferred on the servant.

Eckes did not violate any instructions in turning the car over

to Sullivan. He did not do it to accomplish a purpose not connected with the business of the defendant or outside of his employment or to execute an errand of his own, but rather it was deemed necessary by him to be in the interest of his employer and with a regard to the safety of his employer's property, and to accomplish part of the purpose of his employment, namely, to have the taxicab taken care of and returned safely to his employer or to the garage from which he had taken it, as he could no longer drive it or take care of it.

It may have been a stupid thing to do, but it was not, under the circumstances, an intentional departure from any duty that he owed his employer, or in violation of any general or limited control that he had.

The plaintiff Helen Katz is awarded the sum of $1,000 for the damage to her taxicab and the plaintiff Charles Katz is awarded the sum of $650 for the injuries he received.