(No. 20763.—

FLORA D. MOSBY, Defendant in Error, *vs.* CLARENCE M. KIMBALL, Plaintiff in Error.

*Opinion filed October 23, 1931.*

WHAM & WHAM, for plaintiff in error.

JUNE C. SMITH, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Appellate Court for the Fourth District affirmed a judgment recovered in the circuit court of Marion county by defendant in error, Flora D. Mosby, against plaintiff in error, Clarence M. Kimball, for $3500 for personal injuries sustained by her in a collision between an automobile in which she was riding and a motor truck owned by plaintiff in error. The record is brought here for review by writ of *certiorari*.

The declaration filed in the circuit court by defendant in error is in two counts. The charge in each count is that plaintiff in error through his agents and servants on January 6, 1930, operated the truck owned by him on the public highway negligently and carelessly by causing and permitting the truck to stand on the public highway during the period between one hour after sunset and sunrise without a light on the front and at the rear thereof, and because of that negligence the automobile in which defendant in error was riding was driven into and against the truck and she was injured. Plaintiff in error filed a plea of the general issue and three special pleas, denying that he was operating the truck at the time of the collision alleged in the declaration and also denying that the per-

sons operating the truck at the time of the collision were his agents or servants.

The facts as shown by the evidence are as follows: On January 6, 1930, plaintiff in error was engaged in the business of selling automobiles in the city of Centralia and had in his employ a salesman, George D. Ryerson. On that day, in response to a telephone call from Mrs. W. D. Cleveland, who owned and operated a grocery store in said city, Ryerson drove a Dodge truck owned by plaintiff in error to the grocery store of Mrs. Cleveland for the purpose of showing and trying to sell it to her. He asked her to take a drive in the truck with him that he might show her how it was operated, but because it was raining she did not do so. She did, however, ask her brother-in-law, Charles Adams, who lived near the grocery store, to go with Ryerson in the truck and learn how to operate it. Ryerson took Adams in the truck and while driving it showed him how the truck was operated. Adams then drove the truck a few blocks and back to the rear of Mrs. Cleveland's store. There was then some conversation between Mrs. Cleveland and Ryerson about the truck. Glenn Miner, a boy employed by Mrs. Cleveland to deliver groceries, came back to the store about this time. Ryerson stated he was going to leave the truck with Mrs. Cleveland over night so that she could try it out. Adams testified that Ryerson said he wanted "us boys" (referring to Adams and Miner) to try out the truck. Ryerson stated that his remarks at that time about the truck were addressed solely to Mrs. Cleveland. Ryerson and Mrs. Cleveland went into the store, where they had further conversation about the proposed terms of sale of the truck, but no sale was consummated and Ryerson left the store and walked toward a hotel. On his way to the hotel he was overtaken by Adams and Miner in the truck. Adams was driving. Ryerson got onto the truck and rode to the hotel. Adams testified that on the way to the hotel Ryerson told him and

Miner to try out the truck. Ryerson denied making this statement. It was about five o'clock in the afternoon when Adams, in the truck, left the hotel. He, accompanied by Miner, drove to Salem, a distance of about sixteen miles. At Salem he drove to the home of his brother in that city and from there took his brother in the truck to a railroad depot in that city. From the depot he drove his brother back home and then drove to a baker's shop, where he stopped a few minutes. He, still accompanied by Miner, then started to drive back to Centralia. When they were about one mile east of Sandoval the truck ran out of gasoline and they were forced to stop. It had been raining and the shoulders of the road were muddy and they did not drive the truck off the pavement. Miner started to walk to a gasoline filling station to get some gasoline. Adams discovered that the tail light on the truck was not burning and walked back of the truck for some distance in order to hail approaching automobiles. The automobile in which defendant in error was riding, which was driven by her husband, came along the road going toward Sandoval. When defendant in error's husband saw the truck he applied his brakes, but his automobile ran into the rear of the truck and defendant in error suffered internal injuries as a result of the collision. The collision occurred, according to the testimony of defendant in error and her husband, between 5:30 and 6:00 o'clock in the evening, and it was dark at that time.

At the close of the evidence for defendant in error, and also at the close of all the evidence, plaintiff in error made a motion for a directed verdict in his favor. Both of these motions were denied.

The first contention made by plaintiff in error is that there is no evidence to establish liability on his part for the injuries suffered by defendant in error. It is his contention that, since he was not personally in control of the truck at the time of the collision, his liability, if any, must

be based on the principle of agency or master and servant. Defendant in error in her brief says: "The right to recover in this case is based not upon the relationship of master and servant existing between Adams and plaintiff in error, but upon the proposition that Ryerson, the employee of plaintiff in error, was doing something in the line of his employment, and in order to further his master's business he engaged or permitted Adams, as his substitute, to demonstrate the truck. The liability in this case is not based upon agency as between Adams and plaintiff in error but upon the proposition that Adams was engaged by Ryerson while Ryerson was performing his duties as the agent of plaintiff in error and in furtherance of that employment."

Construing the evidence in the light most favorable to defendant in error, we may conclude that Ryerson, as an employee of plaintiff in error, had authority to sell the truck, and for the purpose of making such sale had authority to demonstrate it to prospective purchasers or their representatives and to instruct them in the method of operating it, and also had authority to leave it with a prospective purchaser for the purpose of having its operation tested by him or his representatives; that Ryerson in the course of his employment did leave the truck with Mrs. Cleveland and gave her and Adams and Miner permission to try out the truck; that while the truck was being tried out by Adams and Miner the collision occurred in which defendant in error was injured, and that the collision occurred because the truck was allowed to stand on the public road without a tail light, at a time more than one hour after sunset and before sunrise.

It has been held in a number of cases in other jurisdictions that the owner of an automobile may be held liable for injuries occurring through the negligent operation of such automobile by a prospective purchaser or his representative where the act of the owner's employee sent to

demonstrate the automobile and give instructions as to its operation, in allowing the prospective purchaser or his representative to drive, is within the scope of his employment and the employee is present and directing the operation of the automobile. (*Doyon* v. *Massoline Motor Car Co.* 98 N. J. L. 540, 120 Atl. 204; *Wooding* v. *Thom,* 148 App. Div. 21, 132 N. Y. Sup. 50; *Opecello* v *Meads,* 152 Md. 29, 135 Atl. 488; *Hoffman* v. *Roehl,* 61 Mont. 290, 203 Pac. 349; *Holmboe* v. *Morgan,* 69 Ore. 395, 138 Pac. 1084; *Dare* v. *Boss,* 111 id. 190, 224 id. 646.) Some of these cases are cited and relied upon by defendant in error, but in all of them the employee of the owner of the automobile was present in the automobile directing its operation at the time the injuries sued for were sustained, and on that ground they are clearly to be distinguished from the present case. Defendant in error has called our attention to no case, and we have been able to find none, in which the owner of an automobile has been held liable for the negligence of a prospective purchaser of the automobile or his representative when driving the car to find out how it runs, when not accompanied by the owner or his employee. On the other hand, it has been held in a number of cases that there is no liability on the part of the owner of an automobile for the negligence of the prospective purchaser or his representative under such circumstances. *Flaherty* v. *Helfont,* 123 Me. 134, 122 Atl. 180; *Cruse-Crawford Manf. Co.* v. *Rucker,* 123 So. (Ala.) 897; *Goodrich* v. *Musgrave Fence and Auto Co.* 154 Iowa, 637, 135 N. W. 58; *Emery* v. *McCombs,* 167 N. Y. Sup. 474.

In the case of *Cruse-Crawford Manf. Co.* v. *Rucker, supra,* defendant owned an automobile, and his employee, with defendant's authority, had been demonstrating it to one Walker as a prospective purchaser and had taken a trip with him for that purpose and returned to defendant's place of business. The salesman then gave Walker permission to drive the car to his home and exhibit it to his

wife. While Walker was away with the car, after such permission was granted, the collision occurred in which the plaintiff was injured. It was held that there could be no liability on the part of the defendant, because Walker was not acting as defendant's agent in driving the car.

Defendant in error cites and relies upon the case of *Katz* v. *Wolf & Reinheimer,* 129 Misc. 384, 221 N. Y. Sup. 476. In that case the owner of a taxicab employed a chauffeur to drive it, with no instructions whatever as to the manner in which he should perform his duties. The chauffeur became sick and turned possession of the taxicab over to a third person, and while such third person was negligently driving the taxicab he injured the plaintiff. It was held that the act of the chauffeur in giving possession of the taxicab to such third person was not unauthorized by the owner of the taxicab and the owner of the taxicab was liable to the injured person. The liability in that case was based on a provision of a statute of New York providing that "every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." We have no such statute or rule of liability of owners of automobiles in this State.

Defendant in error also cites *Emison* v. *Wylam Ice Cream Co.* 111 So. (Ala.) 216. In that case the owner of a truck employed a driver to drive the truck, with a helper to assist the driver in loading and unloading the truck. The driver was instructed not to let the helper drive the truck, and the helper was instructed to carry out the orders of the driver but not to drive the truck. The driver ordered the helper to drive the truck on a mission in the business of the employer, and while the helper was so driving the truck he negligently caused injury to the plaintiff. The

truck owner was held liable for the injury. Whatever may be said about the opinion in that case, the facts are so entirely different from the facts in this case that the decision there is not controlling here.

The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, since such person is alone liable. To this general rule the cases of master and servant and principal and agent are exceptions and the negligence of the servant or agent is imputable to the master or principal, but to bring the case within the exception it is necessary to show that the relation of master and servant or principal and agent exists between the person at fault and the one sought to be charged for the result of the wrong, and the relation must exist at the time and in respect to the particular transaction out of which the injury arose. (*Johanson* v. *Johnston Printing Co.* 263 Ill. 236.) An automobile is not so dangerous an agency as to make the owner liable for injuries caused by it to travelers on the highway regardless of the agency of the driver, and the owner of an automobile who permits another to operate it is not liable for the negligence of such other in the operation of the automobile unless the other person is, in operating the automobile, the servant or agent of the owner. *Arkin* v. *Page*, 287 Ill. 420; *White* v. *Seitz*, 342 id. 266; *Andersen* v. *Byrnes*, 344 id. 240.

The evidence in this case does not support the view that Adams and Miner, or either of them, in operating and controlling the truck at the time of the collision in which defendant in error was injured, or immediately prior thereto, were the agents or servants of plaintiff in error. It does not tend to establish that Ryerson substituted Adams in his stead to demonstrate the automobile to the prospective purchaser of the truck or her employee, Miner. It was at the suggestion of Mrs. Cleveland, the prospective purchaser, that Ryerson demonstrated the truck to Adams, and he in

428

trying out the truck represented, if anyone, Mrs. Cleveland. Since the evidence was wholly insufficient to warrant a finding that plaintiff in error or his employee or agent controlled the operation of the truck at the time of or just prior to the collision in which defendant in error was injured, the motion of plaintiff in error for a directed verdict in his favor should have been granted.

In view of the conclusion that we have reached it will be unnecessary to discuss other points raised by plaintiff in error.

The judgments of the Appellate Court for the Fourth District and of the circuit court are reversed.

*Judgments reversed.*