## SAUMS *v.* PARFET.

1. AUTOMOBILES—WEIGHT OF EVIDENCE—QUESTION FOR JURY.

    In action against motorist for injuries to bicyclist sustained in collision near curve on a highway, denial of motions for judgment *non obstante veredicto* and for new trial because verdict was against the weight of the evidence *held*, not error where corroborated testimony of respective parties supporting conflicting theories of negligence rendered weight of evidence a question for the jury.

2. DAMAGES—EXCESSIVE VERDICT—PERMANENT DISFIGUREMENT.

    Verdict of $6,375 in favor of 11-year old girl bicyclist, injured in collision with motorist *held*, not excessive, where she suffered intense pain and injuries to face and legs were permanent and very disfiguring.

3. APPEAL AND ERROR—PREJUDICIAL REMARKS OF COUNSEL.

    Error may be assigned upon the prejudicial remarks of counsel and Supreme Court will set aside judgment and grant new trial where it is probable jury's verdict has been affected thereby.

4. TRIAL—PREJUDICIAL REMARKS.

    In action against motorist for personal injuries sustained by 11-year old girl bicyclist as result of collision on a highway near a curve, remarks of plaintiff's counsel in closing argument that motorist would have avoided hitting a cow but failed to use sufficient care so as to avoid hitting bicyclist *held*, not so prejudicial as to have influenced jury in view of the record as a whole and, especially, the court's timely instructions to disregard such remarks.

5. PRINCIPAL AND AGENT—DEFINITION OF AGENCY—CREATION—QUESTION OF FACT.

    Agency, in its broadest sense, includes every relation in which one person acts for or represents another by his authority and whether an agency has been created is determined by relations of the parties as they in fact exist under their agreements or acts.

6. SAME—FUNCTIONS OF AN AGENT.

> An agent is a business representative whose function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons.

7. MASTER AND SERVANT—DEFINITION OF SERVANT.

> A servant is any person, regardless of rank or position, who is in the employ of, and subject to the direction or control in the conduct of the work entrusted to him to perform by, another in any department of labor or business.

8. AUTOMOBILES — PRINCIPAL AND AGENT — MASTER AND SERVANT — PROSPECTIVE PURCHASER.

> Neither the relation of principal and agent nor that of master and servant existed between prospective purchaser of automobile and dealer with whom it had been left by owner to sell, when dealer sent car to prospect and latter, in trying it out, injured bicyclist.

9. SAME—PROSPECTIVE PURCHASER—IMPUTED NEGLIGENCE.

> Mere fact that the owner of an automobile leaves it with another, either as prospective buyer or as sales agent, does not justify imputation to owner of the other's negligence while driving it for demonstration purposes.

10. SAME—PROSPECTIVE PURCHASER—PRESENCE OF SALESMAN—IMPUTED NEGLIGENCE.

> Owner of automobile may not be held liable for negligence of prospective purchaser of it in operation of car where car is entrusted to him for his own purposes and his operation of it is out of the presence and supervision of salesman, although if salesman remains in the car and permits prospect to drive it, owner may be liable for his negligence in so doing.

11. SAME — PROSPECTIVE PURCHASER — NEGLIGENCE — LIABILITY OF OWNER.

> Owner of automobile is not liable for prospective purchaser's negligent operation where owner has no control over the car or its driver at the time of the accident.

12. SAME—LIABILITY OF DEALER—INSURANCE.

> Fact that dealer with whom automobile had been left for sale assured prospective purchaser that car was insured does not affect question of agency of prospect for dealer or right of bicyclist, injured in collision with car driven by prospect, to recover from dealer.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 10, 1934. (Docket No. 96, Calendar No. 38,049.) Decided January 7, 1935.

Case by Mary L. Saums, as guardian of the estate of Mildred L. Chambers, a minor, against Roy T. Parfet and Jesse C. Deal for personal injuries sustained in a collision between an automobile and a bicycle. Verdict and judgment for plaintiff. Defendants appeal. Reversed as to defendant Parfet, affirmed as to defendant Deal.

*Jackson, Fitzgerald & Dalm,* for plaintiff.

*Leo H. Robb* and *Dwight W. Fistler,* for defendant Parfet.

*Harry C. Howard* and *William J. Howard,* for defendant Deal.

NELSON SHARPE, J. On August 23, 1933, Mildred L. Chambers, aged 11 years, was riding on a bicycle in a northerly direction on what is known as the Ravine road a few miles from the city of Kalamazoo. The defendant Deal was driving an automobile in a southerly direction on said road. A collision occurred, in which the young girl sustained quite serious injuries. The automobile had been furnished to Deal by the defendant Parfet for the purpose of demonstration as a prospective purchaser.

The plaintiff, as guardian of her daughter Mildred, brought this action to recover the damages due to such injury. She had verdict and judgment against both defendants in the sum of $6,375. Each of the defendants filed an answer to the declaration, appeared by separate counsel upon the trial, and presents his appeal in like manner. As the liability

of the defendant Parfet is, in any event, contingent on that of the defendant Deal, the errors relied on by the latter will be first considered.

1. *Liability of Deal.* His counsel moved for a directed verdict at the conclusion of plaintiff's proofs, and again after all the evidence had been submitted. Decision was reserved and a motion for judgment *non obstante veredicto* was made and denied. Error is assigned thereon.

Mildred L. Chambers, hereafter spoken of as the plaintiff, testified that as she was proceeding in a northerly direction along the highway, on the easterly side thereof, the defendant Deal, going in a southerly direction, came around a corner in the road and approached her on the side of the road on which she was riding, and when she discovered her apparent danger she turned towards the west side of the road and that Deal, without making any effort to stop his car, turned in the same direction, resulting in the collision which caused her injury. Deal testified that when he rounded the curve he saw the plaintiff on her wheel and turned to his right so that his car was partly off the traveled part of the highway, but that the plaintiff turned her bicycle in front of his car; that he was then traveling about 20 miles per hour, and that he applied his brakes but was unable to avoid the collision which followed. There was testimony tending to corroborate that given by each of the parties. The weight of the evidence was for the jury to pass upon, and, without further reference thereto, we find no error in the denial of the motion for judgment nor in the denial of the motion for a new trial based upon the claim that the verdict was against the weight of the evidence, on which error was also assigned.

It is urged that the verdict is excessive. In overruling the motion for a new trial, the trial court said:

"In view of the age of the plaintiff, and the serious, painful and permanent injuries and disfigurement sustained by her, the verdict is not excessive."

After the collision the plaintiff was at once taken to a hospital in the city of Kalamazoo, where she was treated by Dr. Jennings. He testified that she was then "bleeding profusely from a wound on the side of her face, and from a wound on her leg;" that the wound on her face has left a permanent scar, as a result of which she will always have "a one-sided smile;" that the wound on her leg was open and about two inches in diameter, necessitating the removal of skin from her thigh and grafting it thereon; that the scar thus caused is permanent and her limb more liable to injury by reason thereof. Both the plaintiff and her mother, who nursed her, testified that her suffering was intense. While the verdict is a large one, we do not find it so excessive as to justify its reduction by this court.

In his closing argument to the jury, plaintiff's counsel said:

"Why, members of the jury, I believe for the purposes of this case we could rest this testimony—this case solely upon the testimony of Mr. Deal, on his own testimony that he didn't see this girl until he was within 50 feet of her; that he had a vision of her for over 200 feet; that he was driving at a rate of 20 miles an hour. He could have stopped his car a half dozen times before he got there and at least three times after he saw her, and at least 10 or 12 times when he ought to have seen her. Why, members of the jury, if it had been a cow in the road

there, he wouldn't have hit her. No, sir, you bet he wouldn't. He would have stopped his car, but it was a little child. It was a little child, and I submit he ought to be required to exercise the same degree of care for a living being that he would have for an animal.''

The following then occurred:

*''Mr. Howard:* I would like to object to the last argument, that Mr. Deal could have seen a cow and would have avoided the cow, but that he appeals for the sympathy of the jury saying that the little child —he wouldn't pay any attention to the child. There is nothing in the record to justify that, and that is an unfair appeal, and I ask the court to so tell the jury.

*''The Court:* I don't know just what counsel intended by that statement.

*''Mr. Jackson:* Just a question of reasonable control of his car.

*''The Court:* Certainly, counsel did not intend to argue that defendant was guilty of any gross, wanton negligence; didn't intend to argue that he was guilty of any reckless disregard of the rights of a child. I am sure Mr. Jackson had no—intended no such implication as that by his statement. Because of the possible implications that might arise from such a statement, I think the jury should disregard it. They may disregard it. You should disregard that statement.''

Error may be assigned upon the prejudicial remarks of counsel, and this court has not hesitated to set aside judgments and grant new trials in cases where it was apparent that the verdicts of the juries had been probably affected thereby. *Barnaby* v. *Vorauer,* 212 Mich. 395, and cases cited. But while the remarks above made were uncalled for, in view of the action of the trial court and the record as a

whole we are not impressed that the jury were unduly influenced by what then occurred.

The judgment against Deal is affirmed.

2. *Liability of the defendant Parfet.* The defendant Parfet was a dealer in automobiles in the city of Kalamazoo. The car had been left with him by the owner for sale. Deal was a prospective purchaser. He testified that Parfet, while in his garage, told him to pick out any car that he wanted and it would be sent to his home to try it out, and that he picked out a car; that he "had a hesitancy about driving that car because it was somebody else's car," and that Parfet said to him "it was covered so that if I had an accident, it would be taken care of;" that the car was sent up to his house by Parfet and left in his driveway, and that he was trying it out when the collision occurred.

The trial court held that no liability attached to Parfet as owner of the car under 1 Comp. Laws 1929, § 4648, but that under Deal's testimony, which was not disputed, Parfet was liable under the common law, and he instructed the jury that if they found that Deal was liable they should also find liability on the part of Parfet. Error is assigned upon this instruction by counsel for Parfet.

The common-law liability is based upon the claim that Deal, when driving the car to determine whether he would purchase it, was acting as the agent of Parfet.

"'Agency' in its broadest sense includes every relation in which one person acts for or represents another by his authority." 2 C. J. p. 419.

"Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts." 21 R. C. L. p. 819.

"The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons. To the proper performance of his functions, therefore, it is absolutely essential that there shall be third persons in contemplation between whom and the principal legal obligations are to be thus created, modified or otherwise affected by the acts of the agent." 1 Mechem on Agency (2d Ed.), p. 21.

"The word servant, in our legal nomenclature, has a broad significance, and embraces all persons of whatever rank or position who are in the employ and subject to the direction or control of another in any department of labor or business." Wood, Master & Servant, § 1.

The distinction between an agent and a servant is that the former represents his principal in business dealings with another person and the latter is in the employ of his master and subject to his direction and control in the work entrusted to him to perform.

No agency was created by the request of Parfet that Deal should try out the car sent to him. In doing so, he performed no act or service in which third persons were interested. Neither can it be said that he was at that time in the employ of Parfet as his servant, as no duty was imposed on him to do so. In our opinion the facts did not justify a holding that Deal was acting as the agent or servant of Parfet when driving the car at the time of the collision.

While no case involving a similar question has been presented to this court, that of *Hartley* v. *Miller,* 165 Mich. 115 (33 L. R. A. [N. S.] 81, 1 N. C. C. A. 126), has some bearing thereon. It was decided before the enactment of the statute above referred

to. Miller had loaned his car to August Lootens for use on a certain day, and when Lootens came for it he invited Miller to ride with him on the trip he was taking. Miller accepted the invitation and rode in the front seat with him, but in no way participated in the operation or control of the car. It came into collision with a street car in which the plaintiff was riding, and it was sought to hold Miller liable for the negligence of Lootens in driving the car. This court held that "there is no theory upon which Miller could be held liable for the negligence of Lootens."

The conclusion reached is, however, supported by ample authority.

"The mere fact that the owner of an automobile leaves it with another, either as prospective buyer or sales agent, does not justify the imputation to the owner of the other's negligence while driving it for demonstration purposes." 2 Blashfield, Cyclopedia of Automobile Law, p. 1323, § 7.

"There are authorities to the effect that where the salesman remains in the car and permits the prospective purchaser to drive it, the owner may be liable for his negligence in so doing. But this doctrine will not be applied where the salesman intrusts the car to the prospect for his own purposes, and he operates it out of the presence and supervision of the salesman." 7–8 Huddy, Cyclopedia of Automobile Law (9th Ed.), p. 280.

"The owner will not be liable for the negligent operation by a prospective purchaser, where he has no control over the car or its driver at the time of the accident." Babbitt, Motor Vehicle Law (4th Ed.), § 1213.

These holdings would, of course, not be applicable under the provisions in our statute above referred to, if Parfet had been the owner of the automobile.

See, also, *Werner* v. *Johnson,* 122 Neb. 870 (239 N. W. 207); *Cruse-Crawford Manfg. Co.* v. *Rucker,* 220 Ala. 101 (123 South. 897); *Hamp* v. *Universal Auto Co.,* 173 Wash. 585 (24 Pac. [2d] 77); *Marshall* v. *Fenton,* 107 Conn. 728 (142 Atl. 403); *Mosby* v. *Kimball,* 345 Ill. 420 (178 N. E. 66); *Beaudoin* v. *W. F. Mahaney, Inc.,* 131 Me. 118 (159 Atl. 567).

The fact that Parfet assured Deal that the car was insured in no way affects the question of agency or plaintiff's right to recover against him.

The judgment against Parfet is reversed and set aside, with costs in his favor against the plaintiff.

Potter, C. J., and North; Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.