ROY *v.* HAMMETT MOTORS, INC.

(Division A. Jan. 2, 1940. Suggestion of Error Overruled Feb. 12, 1940.)

[192 So. 570. No. 33935.]

Eaton & Eaton, of Gulfport, for appellant.

Leathers, Wallace & Greaves, of Gulfport, for appellee.

Argued orally by **B. E. Eaton**, for appellant, and by **P. D. Greaves**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee is a dealer in automobiles, including used cars. Watts was a salesman in appellee's employ. Watts had sought to induce one Charles Coleman to purchase a certain second-hand Dodge sedan, and Coleman had personally tested the car but found it unsatisfactory. Appellee thereupon made some repairs or improvements upon the vehicle and shortly thereafter, on February 8, 1939, Watts took it to the home of Coleman in the effort to renew the negotiations for its sale to Coleman. The latter stated that he was busy at that time and could not give any present attention to the matter and stated, moreover, that he was no longer interested as a prospective purchaser; but as to this, appellant says in his brief that "Charles Coleman's testimony shows that he was interested in buying the car but that, as a shrewd buyer, he was assuming an indifferent attitude that Watts however well understood."

Watts so understanding, suggested that one of Coleman's sons drive Watts and the car back to appellee's place of business, and that thereupon the son would return the car to Coleman's home, and that then Coleman's two sons, one or both, if Coleman chose not to do so, should test or try out the car. Coleman stated in response to this suggestion that Watts could do as he pleased about the matter. One of Coleman's sons then drove Watts to appellee's place, and in accordance with the stated arrangement, the car was turned over to the son who took it immediately to Coleman's home. Soon thereafter the two sons of Coleman, with their father's knowledge, got in the car, one of them driving, and in another town about twelve miles distant, the car, while being negligently operated, collided with appellant's automobile, injuring appellant personally and also damaging his automobile.

Appellant instituted his action for damages against the owner of the automobile on the theory or theories

hereinafter mentioned that the owner was liable for the negligence of the driver. On the trial the court granted a peremptory instruction for the owner defendant; hence this appeal.

We have not here a case where the owner's employe or sales agent was riding in the car at the time of the injury; neither is there present a situation where the owner or his agent was negligent in turning over the car to a person or persons who were known to be incompetent or reckless, or where the owner or his agent had such knowledge as to put them, or either of them, on notice that the person or persons into whose charge it was placed were incompetent or reckless. In what we shall hereafter say, cases of that kind are laid entirely to one side as not being here involved. Appellant does say that the manner in which the injury occurred shows that the driver was incompetent and reckless, but this, if in itself true, falls short of showing that the owner or his agent had any previous notice thereof.

In order that a dealer in chattels of a certain kind may be able to make a sale, he must convince the prospective purchaser that it is to the interest of the prospect to make a purchase of that chattel. And in order that a prospective purchaser may be better enabled to become convinced that it is to his interest to buy, it is within the lawful right of the owner to deliver the chattel into the hands and exclusive control of the prospective purchaser, or the agents or representatives of the prospect for the purposes of test and demonstration by actual use, as fully as any owner has the right to lend his chattel for the accommodation of a lendee. And if it were practically certain that in every case the result of such actual use in the test or demonstration would result in a sale, it could be said with reason that what is done during the course of the test or demonstration would be in the interest or in the behalf of the seller and that he would be liable for any negligent act resulting in injury during that time.

But often the test or demonstration by the prospective

purchaser will result in convincing him that it is not to his interest to make the purchase, thereby disserving the interest of the prospective seller. The conclusion is inescapable, therefore, that the dominant interest which is being served when the prospective purchaser has the chattel in his possession and under his own control for the purposes of test and demonstration, is the interest of the prospective purchaser himself, an interest which for the time being stands in opposition to that of the prospective seller, and in consequence that there is no such relationship between the owner and the prospect as will make the owner liable for the acts of the prospect in the use of the chattel during the course of the test or demonstration and after the delivery of the chattel into the possession, and under the control, of the prospective purchaser for the stated purpose. It is a fact well known that there are many persons who would not purchase an automobile, and especially a second-hand automobile, unless and until it has been tested either by themselves personally or by some person in whose judgment they have particular confidence, all this to be entirely away from and out of the presence of the dealer or his agent and their persuasive dealer's talk.

Accordingly, the great weight of authority is that the owner of an automobile, although a dealer, is not liable for the negligence of a prospective purchaser when the latter is driving the automobile to ascertain its qualities, and when not accompanied by the owner or his agent or servant, and when there was nothing to put the owner on notice that the prospective purchaser was a negligent or incompetent driver.

The reasoning by which the courts have arrived at this conclusion has not been uniformly the same, but the principal authorities are collected and cited in Bertrand v. Mutual Motor Co. (Tex. Civ. App.), 38 S. W. (2d) 417; in Graham v. American, etc., Ins. Co. (La. App.), 171 So. 471, and in Mosby v. Kimball, 345 Ill. 420, 178 N. E. 66, and an examination of them will disclose that at last

they rest in substance upon the considerations which are set forth in preceding paragraphs of the present opinion.

It is argued here, however, that this is not a case where the injury occurred while the prospective purchaser was himself driving the automobile, but is where a son of the prospective purchaser was driving and where the owner's authorized agent had delivered the car to another son of the prospect with the suggestion that this son and the son who was actually driving at the time of the injury "should try it out." The argument is that the owner was thereby using the sons of the prospective buyer as the agents of the owner in the business of making the sale,—that it was to be through the intermediation of the sons that a sale might possibly be made to the father and that the sons should be considered the agents or representatives of the owner rather than of the prospective purchaser.

It is not intimated that the sons, either or both, were to receive any pay by way of commissions or otherwise in the event of a sale to the father, and in the statement of the facts it has already been mentioned that by the assent of the father and for the express purposes of demonstration for his satisfaction, the automobile was delivered at the home of the father, the owner having parted with control, and that it was subsequent to this that the sons took the car with the knowledge of the father and in its negligent operation inflicted the injury.

The case which seems nearest to the facts here presented and wherein substantially the same argument was made is Mosby v. Kimball, supra. In that case the motor truck was, with the knowledge and consent of the prospective purchaser, left by the owner's agent in charge of a brother-in-law of the prospect with the understanding that the brother-in-law should try out the truck, the owner's agent surrendering all control to the brother-in-law for that purpose; and later, through the negligence of the latter, the injury occurred. The court held that the brother-in-law was not the agent or representative

of the owner, and that the owner should have had a directed verdict.

In that case, as in many of these cases, the element of control is referred to as a deciding factor; that when a motor vehicle is placed with the prospect, or by the consent of the prospect, with a person who is reasonably to be deemed more interested in the welfare of the prospective purchaser than in that of the prospective seller, for purposes of test or demonstration, the details of the test or demonstration being left solely under the control or under the supervision of the prospect or those more interested in him, the owner is not to be held liable for what happens subsequently in the court of the demonstration, since he retained no right to control what would happen therein. In Graham v. American, etc., Ins. Co., supra, the distinguishing feature, as a test of liability against the owner, was said to be whether the driver and the car at the time of the injury were under the control and direction of the owner.

But the bare proposition of actual physical control at the moment of injury is not always determinative of legal liability—control as respects legal responsibility often runs beyond actual physical control. The test is: Who at the time had the right of control and this gets us back to the question in whose present interest or service is the actual control being exercised; and thus we arrive at the concrete proposition that where the automobile has been actually delivered to or for the prospect and all control over its physical operations has been surrendered by the owner, and the object thence was by a test or demonstration to convince the prospect that it would be to his interest to make the purchase, anything done in the demonstration and test, by the prospect or by another person with his assent, must be ascribed to the service and interest of the prospect and not of the owner.

Appellant argues finally that the duty of the owner's agent, Watts, was to demonstrate the car himself; that it was his duty to keep the automobile within his pres-

ence and under his own control; that if he had been present and in control when the injury occurred, the owner would have been liable; that by absenting himself a liability cannot be escaped which would have existed had he been present. Appellant says that the case is similar to that where a taxicab driver turns the vehicle over to another to drive in his place. But in the latter case the taxicab would still be in operation for the owner, while in the case of a motor vehicle turned over for demonstration purposes to a prospective purchaser or with the consent and approval of the prospect to one for him, more interested in the welfare of the prospect than of the owner, the vehicle would be thereafter in operation for or in behalf of the prospect and not of the owner.

Upon a review of all the authorities, we have concluded that the action of the circuit judge in granting the peremptory charge was correct, and we do not think that Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318, upon which appellant chiefly relies, is sufficiently in point to make it authority here.

Affirmed.