[Cite as *Burris v. Zurich*, 2019-Ohio-5255.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

PATRICIA BURRIS, ET AL.,                    :

    Plaintiffs-Appellants,              :       Case No.   19CA3676

    vs.                                         :

ZURICH, ET AL.,                             :       DECISION & JUDGMENT ENTRY

    Defendants-Appellees.               :

_____

APPEARANCES:

Peter D. Traska, Cleveland, Ohio, for appellant.

Jonathan W. Philipp, Schaumburg, Illinois, for appellees.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-11-19
ABELE, J.

{¶ 1}   This is an appeal from a Ross County Common Pleas Court summary judgment in

favor of Herrnstein Chrysler, Inc. and John Brant, III, defendants below and appellees herein.

Patricia Burris, plaintiff below and appellant herein, assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT SHOULD HAVE FOUND THAT THERE
> IS AN ISSUE OF FACT AS TO APPELLEE HERRNSTEIN
> CHRYSLER, INC.'S DIRECT NEGLIGENCE IN THEIR
> VEHICLE TEST DRIVE PROCEDURES."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT SHOULD HAVE FOUND THAT, AS A MATTER OF OHIO LAW, WHEN A CORPORATE AUTO DEALER'S SALESPERSON IS PRESENT DURING A TEST DRIVE, THE CORPORATE DEALER IS A DIRECT PARTICIPANT OR CO-VENTURER IN THE TEST DRIVE, AND IS THEREFORE LIABLE FOR THE DRIVER'S NEGLIGENCE."

{¶ 2}   In November 2015, Hidy Richards and her friend, Tijuana Zerrei, visited the Herrnstein dealership.   Zerrei had been interested in purchasing a vehicle.   Because Zerrei apparently forgot her driver's license and could not test drive a vehicle,   Richards offered to test drive the vehicle for Zerrei.   The salesperson, Brant, accompanied Richards and Zerrei on the test drive.   During the course of the test drive, Richards collided with the car that appellant and her companion, Jimmy Riddle, had occupied.

{¶ 3}   Appellant and Riddle filed a complaint against multiple parties, including Richards, Herrnstein, Brant, and various insurance companies.   The parties eventually settled or dismissed all of the claims except the claims appellant filed against appellees.   Appellant sought to hold appellees liable for (1) Richards' alleged negligent operation of the vehicle, and (2) Herrnstein's failure to have a test drive policy in place that may have revealed that Richards had worked a graveyard shift the day of the test drive.

{¶ 4}   Subsequently, appellees requested summary judgment and argued that they cannot be held vicariously liable for Richards' alleged negligence.   They further disputed appellant's claim that the court could impute negligence under a joint enterprise theory of liability.

{¶ 5}   To support their respective positions, the parties referred the trial court to the depositions.   Richards stated that she worked the night before the accident and finished work at 6:30 a.m.   Richards explained that after work, she went home to sleep.   Later, she accompanied Zerrei to the dealership and, because Zerrei forgot to bring her driver's license, Richards agreed to test drive the car.

{¶ 6}   Brant testified that he had been unaware that Richards worked until 6:30 a.m. the day of the accident.   When plaintiffs' counsel asked Brant whether he would have allowed Richards to test drive the vehicle if he had known that she had worked all night, Brant responded:

> The way you've asked that question, it would be subjective.   If there was any reason for her–I mean, if she wasn't seemingly able to drive it, then no, I would say something to upper management that there was a problem.   If she didn't have any indication that there was any issue and she had a valid driver's license and a seemingly valid insurance card and signed the test drive agreement, then I would have let her drive.

Brant stated that he did not notice anything to lead him to believe that Richards would have a problem driving the car.

{¶ 7}   Herrnstein's director of sales operations stated that the dealership's test drive policy is to ask for a driver's license and to obtain a copy of the insurance card, or to otherwise obtain the insurance information by asking the prospective purchaser for the insurance information.

{¶ 8}   The trial court subsequently granted appellees' request for summary judgment. This appeal followed.   In her two assignments of error, appellant argues that the trial court incorrectly entered summary judgment in appellees' favor.   Because the same standard of review applies to both assignments of error, for ease of discussion we consider them together.

A

{¶ 9}    Initially, we observe that appellate courts must conduct a de novo review of trial court summary judgment decisions.   *E.g., State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio St.3d 425, 2019-Ohio-1329, 128 N.E.3d 1329, ¶ 8; *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13; *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. *Grafton*, 77 Ohio St.3d at 105.

{¶ 10} Civ.R. 56(C) provides, in relevant part, as follows:

* * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   No evidence or stipulation may be considered except as stated in this rule.   A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 11} Accordingly, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party.   *Pelletier* at ¶ 13; *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

B

{¶ 12} In her first assignment of error, appellant asserts that genuine issues of fact remain as to whether Herrnstein acted negligently by (1) failing to inquire into Richards' competency to operate a vehicle, and (2) failing to have a policy that may have revealed that Richards had worked until 6:30 a.m. the day of the test drive. Appellant argues that Ohio case law does not exist regarding "a car dealer's direct liability for an accident caused by a driver who was not up to operating a vehicle during the test drive." Appellant thus requests that this court to consider a case from Louisiana, *Barnett v. Globe Indemn. Co.*, 557 So.2d 300,301 (La.App.1990).

{¶ 13} Appellees respond that appellant's negligence claim against appellees is one for negligent entrustment. Appellees contends that appellant cannot establish any genuine issues of material fact to show that Herrnstein negligently entrusted the vehicle to Richards.

{¶ 14} In reply, appellant appears to suggest that because no Ohio case has ever applied a negligent entrustment theory against a car dealership, then this court should follow *Barnett*. Appellant asserts that car dealers have heightened duties when allowing prospective purchasers to test drive vehicles and that car dealers act negligently when they fail to inquire into an individual's competency to drive.

{¶ 15} Despite appellant's attempt to recast her negligence claim as something other than negligent entrustment, we point out that courts across the country have uniformly applied the negligent entrustment theory of liability in actions against car dealerships. In fact, the case that appellant asks us to follow, *Barnett*, considered the car dealership's liability under a negligent entrustment theory and not under some heightened negligence standard applicable to car dealerships only. In *Barnett*, the car dealership permitted an individual to test drive one of its

vehicles. During the test drive, the vehicle struck the plaintiffs' vehicle. The plaintiffs filed a complaint against the car dealership and alleged that the salesperson and car dealership acted negligently by entrusting the vehicle to the individual who test drove the car. The plaintiffs sought to hold the car dealership liable under theories of imputed negligence and negligent entrustment. The trial court later entered summary judgment in the car dealership's favor, and the plaintiffs appealed.

{¶ 16} On appeal, the plaintiffs argued that factual disputes remained regarding its two theories of liability. The plaintiffs claimed that the car dealership and the prospective purchaser were engaged in a joint venture at the time of the accident and that the car dealership thus may be liable for the prospective purchaser's alleged negligence. The plaintiffs further asserted that the car dealership acted negligently by entrusting the vehicle to an alleged incompetent driver.

{¶ 17} The Louisiana court rejected both arguments. The court noted that under Louisiana law, a joint venture exists between "'occupants of a conveyance'" when the occupants share a "'joint interest in the objects and purposes of the enterprise'" and "'an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.'" *Id.*, quoting *Ault & Wiborg Co. Of Canada v. Carson Carbon Co.*, 160 So. 298 (1935). The appellate court determined that the plaintiffs failed to present any evidence to support their theory of liability under a joint venture theory. The court explained:

> The mere fact of [the individual]'s test drive as a prospective purchaser and [the salesperson]'s allowing the test drive in hopes of selling the car do not suggest a mutual intent to combine their property, labor or skill in the conduct of a venture analogous to a partnership.

*Id.* at 301.

{¶ 18} The court also rejected the plaintiffs' negligent entrustment theory of liability. The court first indicated that "the lender of a vehicle is not responsible for the negligence of the borrower, unless he had or should have had knowledge the borrower was physically or mentally incompetent to drive." *Id.* at 301. The court did not, however, state whether the car dealer knew or should have known of the prospective purchaser's alleged incompetence. Instead, the court recognized that the plaintiffs cited "some cases in which the negligence of the driver of an automobile was imputed to the owner/passenger based on an agency theory or on the owner's theoretical right to control the operation of the vehicle." The court pointed out, however, that the Louisiana Supreme Court rejected the rule that the plaintiffs had proposed: to hold car dealership liable under an imputed negligence theory or under an agency theory. *Id.* at 302. The court also recited the Louisiana Supreme Court's holding in *Gaspard v. LeMaire*, 158 So.2d 149, 154 (La.1963): "'It is unrealistic to hold in the present day uses of motor vehicles that the occupant of a motor vehicle has factually any control or right of control over the operator.'" *Barnett* at 302.

{¶ 19} Thus, the court determined that the plaintiffs had failed to present a genuine issue of material fact and that the trial court properly entered summary judgment in the car dealer's favor. *Barnett* thus did not hold, as appellant seems to suggest, that car dealerships face heightened duties when they permit prospective purchasers to test drive vehicles. Instead, *Barnett* applied the traditional theory of negligent entrustment and the theory that seeks to hold a car dealership liable under a joint venture theory. The court declined to hold car dealerships liable under either theory based upon the mere fact of a prospective purchaser's test drive while a salesperson is also an occupant.

{¶ 20} Cases within and outside Ohio appear to align with *Barnett*. In *Shea v. Brown*, 153 A.2d 419 (1959), the Connecticut Supreme Court determined that a car dealership did not negligently entrust a motor vehicle by allowing an eighteen-year-old prospective purchaser with a suspended license to test drive a vehicle. The court refused to hold the car dealership liable based on the plaintiff's allegation that the car dealership possessed a duty to inquire into the status of the prospective purchaser's driver's license. *Id.* at 420.

{¶ 21} A Nebraska Court of Appeals likewise declined to hold car dealerships liable based on a failure to inquire into the status of a prospective purchaser's driver's license. *Suiter v. Epperson*, 571 N.W.2d 92, 104 (Neb.App.1997). The *Suiter* court recognized that car dealerships could be liable under a negligent entrustment theory if the plaintiff established both of the following: (1) that "the dealer [knew], or in the exercise of reasonable care should [have known], the driver to be incompetent" and (2) "the injuries complained of must be a result of such incompetence." *Id.* The court further noted, however, that "[c]ourts in other states have limited a dealer's liability for negligent entrustment to circumstances where the driver was intoxicated, lacked driving experience, or was unfamiliar with a particular type of car." *Id.*, citing Annotation, *Dealer's Liability for Negligent Operation of Car by Prospective Purchaser or One Acting for Him*, 31 A.L.R.2d 1441 (1953). The *Suiter* court found that the plaintiff failed to present any evidence to show that the car dealership knew, or should have known, that the prospective purchaser was incompetent to drive. In doing so, the court rejected the argument that car dealerships possess a duty to ask for a license. The court agreed that requiring car dealerships to "ensure that they are entrusting a vehicle to a licensed driver for a test drive seems a rather elementary statement of desirable public policy." *Id.* at 105. The court aptly

recognized, however, that it does "not make public policy." *Id.*

{¶ 22} Similarly, a New Mexico court of appeals determined that a car dealership did not negligently entrust a motor vehicle to an unlicensed prospective purchaser. *Spencer v. Gamboa*, 699 P.2d 623 (Ct. App. 1985). In *Spencer*, the plaintiff's husband was killed when the prospective purchaser ran a red light and struck the plaintiff's husband's vehicle. The plaintiff asserted that the car dealership knew, or should have known, that the prospective purchaser lacked a valid driver's license and was an incompetent driver. The appellate court affirmed the summary judgment and concluded that, even though the car dealership's entrustment of the vehicle violated state law, the plaintiff failed to present evidence to show that the car dealership knew, or should have known, that the prospective purchaser was an incompetent driver. *Id.* at 625.

{¶ 23} In *Boutilier v. Chrysler Ins. Co.,* 14 Fla. L. Weekly Fed. D 231, 2001 WL 220159 (M.D.Fla.Jan. 31, 2001), the court rejected the precise argument appellant makes: that a car dealership "is held to a higher standard of care due to the relationship between a dealership and prospective buyer." *Id.* at *4. In reaching its decision, the court observed:

> Courts across the country have established that "at common law, a dealer who holds a motor vehicle for purposes of sale is not liable for injuries or damages from negligence in the operation of the dealer's vehicle by a prospective purchaser, or one acting for a prospective purchaser, who is seeking to determine whether to purchase such vehicle." 8 Am.Jur.2d § 708 (citing *West v. Wall*, 191 Ark. 856, 88 S.W.2d 63 (1935); *Sproll v. Burkett Motor Co.*, 223 Iowa 902, 274 N.W. 63 (1937); *Foley v. John H. Bates, Inc.*, 295 Mass. 557, 4 N.E.2d 349 (1936); *Saums v. Parfet*, 270 Mich. 165, 258 N.W. 235 (1935); *Hill v. Harrill*, 203 Tenn.123, 310 S.W.2d 169 (1957); *Flaherty v. Helfont*, 123 Me. 134, 122 A. 180 (1923); *Roy v. Hammett Motors*, 187 Miss. 362, 192 So. 570 (1940). In *Mathews v. Federated Serv. Ins. Co.*, 857 P.2d 852 (Or.App.1993), the court held that an individual or entity is not negligent in entrusting a vehicle to a licensed driver simply because the driver was young or inexperienced. In *Grimmett v.*

> *Burke*, 906 P.2d 156, 165 (Kan.Ct.App.1996), the court held that entrusting a vehicle to an individual with a suspended driver's license is not negligence, absent actual or imputed knowledge that the driver was incompetent or dangerous.

*Id.* at *3.

{¶ 24} Based upon the foregoing, the court held that the car dealership had "no duty to investigate or determine [the prospective purchaser]'s competency to operate the automobile." *Id.* at *4.

{¶ 25} Little Ohio case law directly addresses a car dealership's liability to a third party injured during the course of a prospective purchaser's test drive. The Ninth District held that a vehicle lessor and its agent could not be held liable under a negligent entrustment theory when the lessee's operation of the leased vehicle caused injury to a third party. In *Bell*, the plaintiff sought redress for injuries that resulted when the lessee crashed the vehicle. The plaintiff asserted that the lessor and the agent knew that the lessee had difficulty obtaining insurance and that they thus had "a duty to check his driving record." Id. at *2.

{¶ 26} The court noted that the lessor "may be held liable in negligence for an injury received by a third person * * * if it knowingly leases a motor vehicle to an inexperienced or incompetent driver whose negligent operation results in the injury." *Id.* at *1. The court explained that to hold the lessor liable under a negligent entrustment theory, the injured party must show that the lessor "was negligent because it knew or should have known at the time of the lease either that [the operator] had no driver's license, or that he was incompetent or unqualified to operate a motor vehicle." *Id.* at *2. The court concluded that the lessor had no duty to inquire into the lessee's driving record and the lessor and the agent were entitled to judgment as a matter of law regarding the plaintiff's negligent entrustment claim.

{¶ 27} In *Williamson v. Eclipse Motor Lines*, the Ohio Supreme Court held that motor vehicle owners ordinarily are not liable for an entrustee's negligent operation of a motor vehicle. 145 Ohio St. 467, 62 N.E.2d 339 (1945), paragraph one of the syllabus. "Liability may arise, however, where an owner permits the operation of his motor vehicle by one who is so lacking in competency and skill as to convert it into a dangerous instrumentality." *Id.* The court stated that to hold a motor vehicle owner liable for negligently entrusting a vehicle, the injured person must establish "by competent evidence that the owner had knowledge of the driver's incompetence, inexperience or reckless tendency as an operator, or that the owner, in the exercise of ordinary care, should have known thereof from facts and circumstances with which he was acquainted." *Id.* at paragraph three of the syllabus.

{¶ 28} Based upon all of the foregoing, we do not agree with appellant that car dealerships possess some heightened duty when allowing prospective purchasers to test drive vehicles. Instead, the general rules regarding negligent entrustment apply.

{¶ 29} In the case sub judice, appellant has not produced any evidence to suggest appellees knew, or should have known, that Richards was allegedly incompetent to test drive a vehicle. Even if Richards had worked a graveyard shift shortly before the test drive, nothing in the record establishes that Richards appears to be so sleep-deprived that appellees knew, or should have known, that she was incompetent to operate a motor vehicle. Furthermore, the cases referenced above indicate that car dealerships do not have a duty to inquire into a potential purchaser's competency to operate a vehicle during a test drive. Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

C

{¶ 30} In her second assignment of error, appellant asserts that genuine issues of material fact remain as to whether Richards' negligence may be imputed to appellees. Appellant contends that negligence may be imputed to appellees if they were engaged in a joint venture with Richards, the individual who test drove the vehicle.

{¶ 31} "The doctrine of imputed negligence does not ordinarily apply in Ohio, an exception being when parties are engaged in a joint enterprise." *Bloom v. Leech*, 120 Ohio St. 239, 166 N.E. 137 (1929), syllabus. "A 'joint enterprise' within the law of imputed negligence is the joint prosecution of a common purpose under such circumstances that each member of such enterprise has the authority to act for all in respect to the control of the agencies employed to execute such common purpose." *Id.* "'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management.'" *Id.* at 244, quoting *St. Louis & Sante Fé R. Co. v. Bell*, 58 Okl. 84, 159 P. 336, L. R. A. 1917A, 543; *Landry v. Hubert*, 100 Vt. 268, 137 A. 97; *Jessup, Adm'x v. Davis*, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403.

{¶ 32} In *Bloom*, the court determined that a joint enterprise did not exist between an operator of a motor vehicle and a passenger when the evidence failed to establish that the passenger "had any power or control over the vehicle in which they were riding." *Id.* at 245. Instead, the evidence showed, at most, that the passenger advised the driver of the location to which they were traveling and that the driver asked the passenger to help look for any

approaching vehicles. The court noted that the evidence failed to show that the passenger "had any power or control over the vehicle in which they were riding, or that he had any such authority as would show that he had joint control with * * * the owner and driver of the car." *Id.* The court acknowledged that the driver and the passenger may have shared a common purpose when embarking on the drive, but nevertheless determined that simply because the trip "was beneficial to both" did not mean that they had "joint operation or control of the automobile in which they were riding." *Id.* The court explained that to establish a joint undertaking between the driver and a passenger in a motor vehicle, "'it is not sufficient merely that the passenger or occupant of the machine indicate[s] to the driver or chauffeur the route he may wish to travel, or the places to which he wishes to go, even though in this respect there exists between them a common enterprise of riding together." *Id.* at 245-246, quoting *Bryant v. Pac. Elec. Ry. Co.*, 174 Cal. 737, 164 P. 385. Instead, the court explained, "[t]he circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it.'" *Id.* at 246, quoting *Bryant v. Pac. Elec. Ry. Co.*, 174 Cal. 737, 164 P. 385. The court further stated that "'[t]he negligence of the driver of a vehicle is not imputable to the passenger merely because the passenger suggested a ride, and directed as to the place where the car was to be driven.'" *Id.*, quoting *Cram v. City of Des Moines*, 185 Iowa, 1292, 172 N. W. 23.

{¶ 33} The court thus held:

> "A joint adventure in the use of an automobile, implies a common possession and right of control of the vehicle and a responsibility for its negligent operation equally common to all of its occupants; and therefore the rule or doctrine of joint adventure should be restricted to cases in which these essentials are clearly apparent from the agreement of the parties, or arise as a logical

inference or legal conclusion from the facts found by the trier."

*Id.*, quoting *Bryant v. Pac. Elec. Ry. Co.*, 174 Cal. 737, 164 P. 385.

{¶ 34} In the case sub judice, we do not believe that the record contains any evidence to suggest that appellees and Richards were engaged in a joint enterprise. Even though the dealership owned the car, ownership of a car does not, in itself, also show the necessary right of control over the vehicle. Furthermore, the salesman's decision to accompany Richards and the prospective purchaser on the test drive does not necessarily establish that the salesman had a right to joint control over the vehicle. Moreover, we question whether Richards and appellees shared a community of interests in the objects or purposes of the test drive. The purpose of the test drive from Richards' standpoint is to help Richards' friend decide whether to purchase the car. The purpose of the test drive from appellees' standpoint was to sell the car to Richards' friend. Richards' purpose thus was to help her friend decide whether to buy the car. Appellees' purpose was to sell the car. The parties to the alleged joint enterprise thus did not share the same interest in the object of the test drive. Instead, they held different interests.

{¶ 35} Additionally, as we observed in our discussion of appellant's first assignment of error, the Louisiana case that appellant cited, *Barnett*, declined to hold a car dealership liable under an imputed-negligence, joint-enterprise theory based on the mere fact of a prospective purchaser's test drive during which the salesperson also is an occupant. We likewise do not believe that the joint enterprise theory of imputed negligence applies so as to render a car dealership and its salesperson liable for injuries that result to a third party during the course of a prospective purchaser's test drive.

{¶ 36} We recognize that appellant cites a Colorado case that found a car dealership

liable under a joint venture theory of imputed negligence.  *American Family Mut. Ins. Co. v. AN/CF Acquisition Corp.*, 361 P.3d 1098 (Colo.App. 2015).   We decline, however, appellant's invitation to adopt the same rule.   Instead, we believe that the Ohio Supreme Court should be the court to decide whether to adopt a rule that holds car dealerships liable under a joint venture theory of imputed negligence.[1]

{¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[1] Although neither party cites the following Ohio case, we note that a 1939 Ohio appellate decision found that a car dealer could be held liable for a prospective purchaser's negligent operation of the car dealer's motor vehicle during a test drive under the doctrine of respondeat superior.  *Dahnke v. Meggitt*, 63 Ohio App. 252, 255, 26 N.E.2d 223 (6th Dist.1939).   Because neither party has argued the applicability of *Dahnke* to the facts involved in the case sub judice, we do not address it.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.