[Cite as *Howard, Adm. of the Estate of Sean David Howard, Sr. v. Szozda, et al.*, 6th Dist. Lucas No. L-22-1297, *2023-Ohio-*, 2023-Ohio-3407.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Linda L. Howard, Administrator of the
Estate of Sean David Howard, Sr., et al.

      Appellants

v.

Michelle Szozda, et al.

      Appellees

Court of Appeals No.  L-22-1297

Trial Court No.  CI0202003524

**<u>DECISION AND JUDGMENT</u>**

Decided:  September 22, 2023

* * * * *

Edwin A. Coy, for appellants.

Paul R. Morway, for appellee Kevin Vasquez.

* * * * *

**MAYLE, J.**

**{¶ 1}** Plaintiffs-appellants, Linda L. Howard, Administrator of the Estate of Sean David Howard, Sr., and Steven Howard, Legal Custodian, appeal the November 21, 2022 judgment of the Lucas County Court of Common Pleas, granting summary judgment in

favor of defendants-appellees, Kevin Vasquez and Kellsie Cousino. Vasquez has filed a brief on appeal; Cousino has not. For the following reasons, we affirm the trial court judgment.

## I.    Background

{¶ 2} On October 6, 2019, a group of women attended a bridal shower for a co-worker. At some point, the shower transitioned into a party, and male co-workers arrived. Michelle Szozda, Kevin Vasquez, Kellsie Cousino, and Kirk Mills, were among those present. Seven attendees, including Szozda, Vasquez, Cousino, and Mills, consumed alcohol and cocaine, but ran out of cocaine and decided to obtain more. They pooled their money—$20 each—and after deeming that Szozda was the least impaired among them, designated her to drive Mills to make the purchase. Szozda and Mills additional cocaine, but on the way back to the party, Szozda caused a two-car motor vehicle accident that resulted in the death of Sean Howard, Sr., the driver of the other vehicle, and injuries to his passenger, his two-year-old daughter.

{¶ 3} Szozda was charged criminally. The administrator of Howard's estate and his daughter's legal guardian then sued Szozda and multiple others civilly for wrongful death, negligence, and punitive damages. Although they recognized that Szozda owned and was operating the vehicle, the Howards sought to hold liable all seven people who consumed and contributed to the purchase of the cocaine. Their theory was that by pooling their money and designating Szozda to drive and Mills to purchase the drugs, the

2.

seven party-goers formed a joint venture, pursuant to which Szozda's negligence could be imputed to all venturers. Vasquez and Cousino, neither of whom were in the vehicle when the collision occurred, moved for summary judgment on the Howards' claims.

{¶ 4} Vasquez and Cousino argued that a joint venture requires (1) a joint contract, (2) intention, (3) community of interest and joint control, and (4) profit and loss. They claimed that all elements were missing here. They further argued that even if a joint venture was formed, they could not be liable for Szozda's negligence because they had no joint operation or control of the movements of the vehicle.

{¶ 5} The trial court agreed that the element of "joint control" was lacking, and deeming it unnecessary to consider the other three elements, it granted summary judgment in favor of Vasquez and Cousino. It reasoned that "[n]ot only were Defendants herein not driving the vehicle at the time of the crash which killed/injured Plaintiffs, Defendants were not passengers in the vehicle; they were at a different location entirely from that of the crash." Moreover, the court found, even if all the elements of a joint venture were satisfied, "any input Defendants had into the operation of the vehicle was too far removed to find they had joint control at the time of the crash."

{¶ 6} The Howards appealed. They assign the following error for our review:

The trial court erred in granting summary judgment to Appellees Vasquez and Cousino by ruling there is no genuine issue of material fact with respect to the community of interest and joint control element of the

3.

joint venture Appellants Howard allege existed among Appellees Vasquez and Cousino and the other defendants below at the time of the crash.

## II.  Summary Judgment Standard

{¶ 7} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 8} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  When a properly supported motion for summary judgment is

4.

made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III.    Law and Analysis

{¶ 9} In Ohio, the negligence of one person will not be imputed to another unless an exception applies. *Bloom v. Leech*, 120 Ohio St. 239, 166 N.E. 137 (1929). Joint enterprise—or "joint venture"—is one such exception. *Id. See Vonderheide v. Comerford*, 113 Ohio App. 284, 286, 177 N.E.2d 793 (1st Dist.1961) (Ohio courts use the terms "joint venture," "joint enterprise," and "joint adventure" interchangeably); *Cassity v. Oren Fab & Supply, Inc.,* 2d Dist. Montgomery No. 13185, 1993 WL 112536, *2 (Apr. 12, 1993) ("[J]oint venture [is] also referred to as joint adventure or joint enterprise[.]").[1] In their sole assignment of error, the Howards claim that genuine issues of material fact exist as to whether the seven named defendants formed a joint venture,

---

[1] Black's Law Dictionary defines "joint enterprise," inter alia*,* as a "joint venture for noncommercial purposes." *Black's Law Dictionary* (11th Ed.2019).

5.

pursuant to which liability may be imputed to Vasquez and Cousino for Szozda's negligence. They insist that these issues of fact precluded the trial court from granting summary judgment in favor of Vasquez and Cousino.

{¶ 10} Formation of a joint venture requires four elements: (1) a joint contract, either express or implied, to engage in a specific business enterprise; (2) an intention to associate as joint venturers; (3) a community of interest and joint control; and (4) an agreement to share jointly and severally in profits and losses. *Ford v. McCue*, 163 Ohio St. 498, 502-03, 127 N.E.2d 209 (1955). The parties must intend to associate themselves as joint venturers, as determined using the ordinary rules for interpreting and construing contracts. *Id.* They will not be found to have formed a joint venture for purposes of imputing negligence unless there is "a community of interest in the purpose of the undertaking, and equal authority or right to direct and govern the movements and conduct of each other in connection therewith." *Id.* Ohio courts recognize that "the person alleging joint enterprise for the purpose of imputing negligence has a heavy burden of proof since the courts do not favor the doctrine." *Weinstein v. Anselmo's Landscape & Design,* 8th Dist. Cuyahoga No. 70643, 1996 WL 674004, *3 (Nov. 21, 1996), citing *O'Donnell v. Korosec*, Geauga App. No. 91-G-1659, 1992 WL 361434 (Nov. 27, 1992), citing, *Lester v. John R. Jurgensen Co.*, 400 F.2d 393, 396 (6th Cir.1968).

6.

{¶ 11} Szozda was deposed in this matter. The Howards claim that Szozda's deposition testimony—where she testified to the facts summarized above—provided evidence of each element required for formation of a joint venture.

{¶ 12} As to the first element, a joint contract, the Howards claim that a joint venture requires an agreement to undertake a specific enterprise or purpose. They insist that here, the seven named defendants agreed they wanted to buy cocaine, they each contributed $20 to fund the purchase, each participated in the decision to designate Szozda the driver and Mills the buyer, and each agreed that Szozda and Mills would return to distribute the cocaine to be consumed by all. They maintain that there was a meeting of the minds as to the purpose of the venture, shared financial contribution, and agreed planning for carrying out and sharing the purchase.

{¶ 13} As to the second element, intention, the Howards claim that the seven named defendants were the only people at the party consuming cocaine, all seven snorted the initial supply until it was gone, and all seven wanted more, so they combined funds, selected the least impaired driver, and appointed a buyer who had a connection. The Howards insist that these facts evidence an intention to associate themselves with one another.

{¶ 14} As to the third element, community of interest and joint control, the Howards argue that members of a joint venture may delegate joint control and need not participate equally in every aspect of the venture. They emphasize that the group

7.

specifically considered—and with cause and reason—appointed Szozda the driver and Mills the buyer because they were deemed the best suited to accomplish the venture; they specifically selected Szozda because she was the least impaired. Although the Howards acknowledge that Vasquez and Cousino did not ride along to supervise Szozda's driving, the Howards insist they were jointly and severally responsible for setting the venture in motion. They claim that Vasquez and Cousino knew the venture would be more perilous if anyone other than Szozda drove, and they made the collective decision to entrust her with this task. The Howards maintain that they did not need to be in the car "hovering over the steering wheel" to satisfy the element of joint control, and they characterize Vasquez and Cousino's participation as "active and continuing."

{¶ 15} On this point, the Howards rely on *Kahle v. Turner*, 66 Ohio App.2d 49, 420 N.E.2d 127 (12th Dist.1979), where the court determined that the sponsor of a carnival was engaged in a joint venture with the owner/operator of a Ferris wheel from which two patrons fell, killing one and injuring the other. The court concluded that the sponsor, who furnished the site, promoted and advertised the event, sold tickets, and provided electricity for the rides, could be liable for wrongful death and personal injuries as a joint venturer even though it did not maintain or operate the Ferris wheel. The Howards insist that it is a question of fact whether joint venturers share community of interest and joint control, and where there is substantial evidence tending to prove that the parties intended to join their property and efforts in furtherance of some enterprise for

8.

their joint profit, the question should be determined by the jury. They insist that substantial evidence exists here.

{¶ 16} Finally, as to the fourth element, an agreement to share in profits and losses, the Howards claim that "profit" is not limited to an expression of financial measure or the attainment of money. They argue that the "profit" here was the anticipated acquisition of cocaine and whatever benefit snorting cocaine presumably provided.

{¶ 17} Vasquez responds that all elements of a joint venture are missing here.

{¶ 18} As to the first element, a joint contract, Vasquez argues that because the performance of the alleged agreement required a violation of law, there was necessarily no lawful contract here.

{¶ 19} As to the second element, intent, Vasquez insists that without a valid contract, there cannot be an intent to associate as joint venturers. He also maintains that a joint venture requires a "business" enterprise, which did not exist here.

{¶ 20} As to the third element, community of interest and joint control, Vasquez emphasizes that the instrument that caused harm to the Howards was Szozda's vehicle, thus the focus of inquiry should be on who had the right to control that motor vehicle when it caused injury—i.e., Szozda. He stresses that he was not in the car, he lacked "authority or right" to govern the movements of Szozda's vehicle leading to the crash, and there was no evidence that he even knew the identity or location of the dealer from

9.

whom Mills would purchase cocaine. Vasquez contends that Ohio courts often refuse to find liability on the part of *passengers* in a vehicle, let alone someone who was not in the vehicle at all and who provided no input as to routes or actual operation of the vehicle. Vasquez distinguishes *Kahle* on the basis that it did not involve the operation of a vehicle, but instead involved specifically-delineated terms of a joint venture. He insists that *Allen v. Benefiel*, 10th Dist. Franklin No. 99AP-90, 1999 WL 770942 (Sept. 30, 1999), decided 20 years after *Kahle* and involving the negligent operation of a motor vehicle, describes the appropriate test to be employed and requires joint operation or control of movements. He maintains that a simple contribution of money is insufficient to establish community of interest and joint control.

{¶ 21} Finally, as to the fourth element, an agreement to share in profit and losses, Vasquez maintains that there was no profit derived from the purchase and no agreement to jointly distribute losses. Vasquez claims, therefore, that the Howards cannot establish this element.

{¶ 22} The trial court concluded that the failure to establish the third element—community of interest and joint control—prevented the formation of a joint venture and was dispositive here. It deemed it unnecessary to address the remaining elements required to form a joint venture. We agree with the trial court.

{¶ 23} The seminal Ohio Supreme Court case on this issue is *Bloom*, 120 Ohio St. at 243-44, 166 N.E. 137. In *Bloom*, the driver intended to purchase livestock from the

10.

passenger, and they drove to the bank of the passenger's surety to verify the surety's financial status. After this stop, the passenger told the driver where the surety lived and they began driving to his home. As the vehicle approached an intersection, the driver asked the passenger to look to see if the intersection was free of streetcars. The passenger said it was clear, but it was not. The car was struck by the streetcar. The court considered the issue of whether the driver's negligence could be imputed to the passenger under a joint enterprise theory.

{¶ 24} The court recognized that the driver and passenger shared a common purpose and the trip "was beneficial to both." But, it explained, "[p]arties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto." (Internal quotations and citation omitted.) *Id.* at 244. The court emphasized that where a "crossing accident" is involved, "the test in determining the question is whether the parties were *jointly* operating or *controlling* the movements of the vehicle in which they were riding"—i.e., "there must be a *right* of mutual control." (Emphasis in original.) *Id.* at 243-244. "Where the guest has no voice in directing and governing the movements of the automobile, he cannot be said to be engaged in a joint adventure with the driver, within the meaning of the law of negligence." *Id.*

11.

{¶ 25} The Ohio Supreme Court concluded that no joint enterprise existed between the driver and the passenger. It reasoned that even though the passenger told the driver the route and destination, and even though the driver asked the passenger to check to see if the intersection was clear, the evidence failed to show that the passenger "had any power or control over the vehicle in which they were riding, or that he had any such authority as would show that he had joint control with * * * the owner and driver of the car." *Id.* at 245. *See also Burris v. Zurich*, 2019-Ohio-5255, 138 N.E.3d 1185, ¶ 32 (4th Dist.).

{¶ 26} Since *Bloom,* Ohio courts continue to recognize that in the context of a motor vehicle accident, the mere fact that two people had a common business interest is not enough to support joint enterprise liability—the lack of control by a person over the vehicle or the driver's driving renders the doctrine inapplicable. *Torres v. Erie Lackawanna Ry. Co.,* 8th Dist. Cuyahoga No. 38485, 1979 WL 210009, *10 (May 31, 1979). *See also Bailey v. Parker*, 34 Ohio App. 207, 211-12, 170 N.E. 607 (5th Dist.1930) (recognizing that even where "all the occupants of the car [are] mutually interested in the object and purpose of their trip * * *, this alone cannot create joint enterprise, as understood in law"). "[T]he key to finding the existence of a joint enterprise in the context of the use of a motor vehicle is the passenger's control over or right to control the actual operation and movement of the motor vehicle." *Allen*, 10th Dist. Franklin No. 99AP-90, 1999 WL 770942, at * 3. *See also Bailey* at *id.* (observing

12.

that before negligence will be imputed to someone other than the driver, "it must first be shown that the parties are engaged in a joint enterprise, and it must be proved that the parties are jointly operating or controlling the movements of the car in which they are riding"). Summary judgment in favor of the defendant is appropriate where the facts construed most strongly in favor of the plaintiff show that the defendant "had neither actual control over nor the right to control the operation of" the vehicle responsible for the collision. *Allen* at * 3.

{¶ 27} In *Allen*, relied on by Vasquez, the driver and passenger had been out drinking with co-workers. Later, the driver was driving the passenger home, when she veered left of center and collided with another vehicle. The plaintiff argued that the driver and passenger had been engaged in a joint enterprise such that the driver's negligence could be imputed to the passenger.

{¶ 28} In *Allen,* the evidence showed that the passenger persuaded the driver to drink despite her reluctance, paid for her drinks, asked her to stop at a second bar, gave her directions, and benefited from getting a ride home from her. There was also evidence that other of their co-workers told the driver that the passenger needed a ride home and the driver agreed to take him home because she thought it would be unsafe for him to drive. But the court concluded that these activities were not sufficient to make it a joint enterprise because the passenger did not have control over the actual operation of the vehicle. *See also Tittle v. Maurer*, 3d Dist. Shelby No. 17-95-5, 1995 WL 641273, *3

13.

(Oct. 23, 1995) (finding that the record contained no evidence which would allow a rational trier of fact to conclude that passenger had any actual or constructive control over the operation of the vehicle); *Collopy By & Through McCarthy v. Gardiner,* 12th Dist. Clermont No. CA85-08-057, 1986 WL 4234, *3 (Apr. 7, 1986) (finding no liability where defendant did not own the car, was not driving, and had no legal right or power to direct the manner in which the car was operated or its route).

{¶ 29} This court has had occasion to consider claims of joint venture liability concerning the operation of a vehicle. In *Elfers v. Bright*, 108 Ohio App. 495, 162 N.E.2d 535 (6th Dist.1958), for instance, four people drove to Florida together. All four shared gas expenses equally. The owner of the vehicle delegated driving responsibility to another occupant of the vehicle. The driver was involved in an accident and the plaintiff, another passenger, was injured. The injured passenger sued both the driver and the owner of the vehicle. The driver argued that because they were engaged in a joint venture, her negligence was imputed to the injured passenger and plaintiff could not recover against her. We disagreed. We concluded that "[t]he occupants of an automobile on a trip to Florida who have agreed with the owner thereof to share the expense of the trip but who do not participate in controlling the actual operation of the vehicle are not engaged in such a joint enterprise as would impute the negligence of the driver thereof to the other occupants." *Id.* at 497. We reasoned that "[a]lthough the four women were engaged in a common objective, they were not engaged in such a joint enterprise as

14.

would impute the negligence of the defendant to the plaintiff" because the element of control over the operation of the vehicle was lacking.[2] *Id.* at 497-498.

{¶ 30} In *Pfund v. Ciesielczyk*, 84 Ohio App.3d 159, 168, 616 N.E.2d 560 (6th Dist.1992), the driver, a teen who had only his temporary permit, picked up two friends, one of whom was a licensed driver, intending to travel to Wauseon with "a common purpose to engage in a pickup basketball game and to return a video to a video rental store." The driver caused an accident. The plaintiff argued that the licensed passenger could be held liable for the accident under the joint venture theory because he was accompanying the permit driver as a licensed driver, and, therefore, had an equal right of control to the vehicle. We concluded otherwise. We found that although "a duty does exist for a licensed driver knowingly accompanying a permit driver to advise, instruct and supervise the permit driver, we are not prepared to extend the duty to include a general requirement that the licensed driver be prepared to control the vehicle." *Id.* We determined that "no genuine factual dispute remain[ed] on the issue that he had no mutual right to control the vehicle," thus, "as a matter of law, no joint enterprise existed" and summary judgment was properly granted to the licensed passenger.

---

[2] *See also Carey v. Seeley's Ceramic Serv., Inc.,* 2d Dist. Miami No. 93-CA-30, 1994 WL 124849, *3 (Apr. 13, 1994) ("The liabilities of joint venturers are predicated on a theory of mutual agency, and evidence of mere joint contribution falls short of the requisite proof of mutuality of control.") (Internal quotations and citations omitted.).

{¶ 31} Finally, in *Simensky v. Zwyer*, 40 Ohio App. 275, 281, 178 N.E. 422 (6th Dist.1931), the plaintiff's decedent was a passenger in a truck driven by an intoxicated driver. He was killed when the driver was involved in a collision with another vehicle. At trial, the court gave a number of jury instructions that the plaintiff claimed were given in error. One such instruction was that if the plaintiff's decedent and the other two occupants of the vehicle were on a pleasure trip, were all intoxicated, were all parties to the drinking, and all participated in the intoxication of the driver, "each would be as much responsible for the car being driven by a drunken person as the driver would be." *Id.* at 280. The instruction further provided that "[i]n such a case it is not very material who drove the car, for, if the injury resulted from the intoxication of the driver, it is the common act of all, and prevents any one of the intoxicated persons, or his personal representative, from recovery." *Id.* at 280-281. We agreed with the plaintiff that the trial court erred in giving this instruction. We found that the principle of joint enterprise was not applicable to the case because the occupants of the truck "were not engaged in a joint enterprise as to the operation of the automobile." *Id.* at 281. We reasoned that there was "no evidence tending to show that the right to control or responsibility for the operation was in any one other than the driver himself," and "joint enterprise with reference to the driving of an automobile requires not only common possession of the automobile by the joint adventurers, but also that they must have joint control and responsibility for its operation." *Id.,* citing *Bloom*, 120 Ohio St. at 246, 166 N.E. 137.

16.

{¶ 32} Here, construing the facts most strongly in favor of the Howards, we conclude that while Vasquez and Cousino may have shared a common objective with Szozda to obtain more cocaine, funded equally by members of the group, Szozda's negligence cannot be imputed to them. The Howards' injury was the direct result of Szozda's control of the operation and movement of her vehicle. Where a plaintiff has sustained injuries caused by a driver alleged to have been engaged in a joint venture, and the plaintiff seeks to impute negligence to the alleged non-driving co-venturers, Ohio courts focus very specifically on whether the alleged, non-driving co-venturers had control of the operation and movement of the vehicle. While Vasquez and Cousino may have been involved in designating Szozda the task of driving to obtain cocaine to be shared by the group, Szozda retained sole control of the operation and movement of the vehicle. Vasquez and Cousino not only lacked control of the operation and movement of the vehicle—they were not even *in* the vehicle. Because Vasquez and Cousino in no way operated or physically controlled the movement of the vehicle, they lacked the "joint control" necessary to impute Szozda's negligence to them under a theory of joint venture liability. Accordingly, the trial court did not err in granting summary judgment to Vasquez and Cousino.

{¶ 33} We find the Howards' assignment of error not well-taken.

## IV.    Conclusion

**{¶ 34}** We find the Howards' sole assignment of error not well-taken.  Szozda's negligence in causing the automobile accident here could not be imputed to Vasquez and Cousino under a theory of joint venture liability because the element of "joint control" could not be established.  Vasquez and Cousino were not passengers in the vehicle, and there was no evidence that they jointly operated or controlled the movements of the vehicle.  We affirm the November 21, 2022 judgment of the Lucas County Court of Common Pleas.  The Howards are ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                              JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.                       _____
CONCUR.                                                   JUDGE


_____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.